## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BADLANDS ENERGY, INC. | ) | Case No. 17-17465-KHT |
| EIN: 98-0204105 | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| BADLANDS PRODUCTION | ) | Case No. 17-17467-KHT |
| COMPANY | ) | Chapter 11 |
| EIN: 84-1461816 | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | Case No. 17-17469-KHT |
| BADLANDS ENERGY-UTAH, LLC | ) | Chapter 11 |
| EIN: 47-2023934 | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | Case No. 17-17471-KHT |
| MYTON OILFIELD RENTALS, LLC, | ) | Chapter 11 |
| EIN: 20-1202389 | ) | |
| Debtor. | ) | |
| | ) | **Jointly Administered Under** |
| MONARCH MIDSTREAM, LLC, | ) | **Case No. 17-17465-KHT** |
| f/k/a MONARCH NATURAL GAS, | ) | |
| LLC | ) | |
| Plaintiff | ) | |
| v. | ) | |
| | ) | Adversary Proceeding No. _____ |
| BADLANDS PRODUCTION | ) | |
| COMPANY, f/k/a GASCO | ) | |
| PRODUCTION COMPANY, a | ) | |
| Colorado corporation; BADLANDS | ) | |
| ENERGY INC., f/k/a GASCO | ) | |
| ENERGY, INC., a Colorado | ) | |
| corporation; and WAPITI UTAH, | ) | |
| L.L.C. f/k/a WAPITI NEWCO, L.L.C., | ) | |
| a Delaware limited liability company. | ) | |
| Defendants | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Monarch Midstream, LLC f/k/a/ Monarch Natural Gas, LLC, ("Monarch")[1] files this Complaint for Declaratory Judgment and Other Relief against the Debtors, Badlands Production Company, f/k/a Gasco Production Company, and Badlands Energy Inc., f/k/a Gasco Energy, Inc. (collectively referred to as "Badlands") and against Wapiti Utah, LLC f/k/a/ Wapiti Newco, L.L.C. ("Wapiti Utah"). As grounds for its Complaint, Monarch avers as follows:

### SUMMARY OF THE ACTION

This adversary proceeding arises out of the attempt by the Debtor Badlands to affect a sale of its assets, including certain oil and gas lease interests, "free and clear" of obligations imposed under two existing contracts with Monarch: a Gas Gathering and Processing Agreement (as amended) and an Agreement for Disposal of Salt Water. As a matter of plain contractual intent, the covenants in both contracts constitute equitable servitudes and real covenants that "run with the land" and are burdens that remain binding on any successor to Badlands' assets. Monarch therefore seeks a declaratory judgment recognizing that the agreements contain covenants running with the land by law and equity and further that Badlands' assets cannot be sold "free and clear" of these contractual obligations under 11 U.S.C. §363 of the Bankruptcy Code or otherwise. In addition, Monarch requests that Wapiti Utah, as the new owner of the Badlands assets, cure the defaults as part of the sale or otherwise be liable for Badlands' breach and further obligations under the two agreements.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§1334(b) and 2201.

---

[1] This is a change in name only.

2

2. Jurisdiction in this Court is proper as a core proceeding pursuant to 28 U.S.C. §§157(b) and 1334.

3. This adversary proceeding relates to a bankruptcy case filed under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"), in a jointly administered case under Case No. 17-17465-KHT which is pending in the United States Bankruptcy Court for the District of Colorado. Therefore, venue is proper in this district under 28 U.S.C. §§1408 and 1409.

4. Plaintiff consents to the jurisdiction of this Court and to the entry of final orders or judgment by the bankruptcy judge.

5. This adversary proceeding is commenced pursuant to Rule 7001(2) of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. §§2201 and 2202, which allows for the relief Monarch is seeking.

**PARTIES**

6. Monarch is a Delaware limited liability company located at 5613 DTC Parkway, Suite 310, Greenwood Village, CO 80111. Monarch is the owner and operator of a natural gas gathering and processing system in Uintah and Duchesne Counties, Utah.

7. Badlands Production Company, f/k/a Gasco Production Company, and Badlands Energy, Inc., f/k/a Gasco Energy, Inc., are Colorado corporations located at 7979 East Tufts Avenue, Suite 1150, Denver, CO 80237, and are Debtors in the above captioned bankruptcy cases. Badlands Energy, Inc. owns 100% of Badlands Production Company and will be collectively referred to as "Badlands".

8. Badlands owns an interest in certain oil and gas leases in Uintah and Duchesne Counties, Utah and owns and has the right to deliver natural gas produced and saved from wells subject to those leases for gathering and processing.

9. Wapiti Utah, L.L.C. f/k/a/ Wapiti Newco. L.L.C. is a Delaware limited liability company which was the successful bidder for Badlands' assets. Both entities will be referred to as "Wapiti Utah".

## FACTUAL BACKGROUND

10. Monarch and Badlands, as successor-in-interest to Gasco Production Company ("Gasco"), are parties to a Gas Gathering and Processing Agreement, effective March 1, 2010, which was amended and restated by the Amended and Restated Gas Gathering and Processing Agreement, effective March 22, 2012 (the "Amended and Restated Agreement"). *See* Exhibits 1 and 2. Under the Amended and Restated Agreement, Badlands agreed to dedicate certain natural gas reserves in Uintah and Duchesne Counties, Utah for gathering and processing at Monarch's facilities.

11. The Amended and Restated Agreement was amended on two occasions. Amendment No. 1 is dated November 6, 2012 and is effective as of March 22, 2012. Amendment No. 2 is dated August 29, 2014 and effective as of July 1, 2014. *See* Exhibits 3 and 4. The Amended and Restated Agreement, together with Amendment Nos. 1 and 2, are hereinafter referred to collectively as the "GPA."

12. Wapiti Oil & Gas II, LLC ("Wapiti") executed a Joinder to Amended and Restated Gas Gathering and Processing Agreement on March 22, 2012 to be effective as of the closing of the acquisition of 50% of Badlands' interest in the leases subject to the GPA. After the closing, Wapiti acquired a 50% interest in Badlands' oil and gas leases subject to the GPA. Therefore, both Badlands and Wapiti own and have the contractual obligation to deliver natural gas produced from wells on those leases to Monarch's facilities in accordance with the terms and conditions of the GPA. Badlands and Wapiti are hereinafter collectively referred to as "Producers."

4

13. Monarch and Gasco also entered into an Agreement for Disposal of Salt Water (the "SWDA"), effective February 26, 2010, under which Gasco committed produced water extracted from its well operations to Monarch's salt water disposal facilities in and around the Wilkin Ridge and Riverbend production areas in Utah. *See* Exhibit 5. On August 29, 2014, Amendment No. 1 to the SWDA was entered and is effective as of July 1, 2014. *See* Exhibit 6.

14. Gasco was required under the SWDA to cause any assignee of its leasehold existing as of February 26, 2010 to be bound to the SWDA. *See* SWDA, ¶2.1(a), p. 2 (Exhibit 5). Upon information and belief, Gasco caused Wapiti to be bound to the terms and conditions of the SWDA in accordance with the agreement.

**I.     The Natural Gas Dedications and Commitments under the GPA**

15. The GPA obligates the Producers to dedicate natural gas reserves subject to specified leases and/or located within a defined Area of Mutual Interest ("AMI") for gathering and processing at Monarch's facilities:

> 3.4    Dedicated Reserves. … Producer (i) exclusively dedicates and commits to the performance of this Agreement the Dedicated Reserves, (ii) represents that the Dedicated Reserves are not otherwise subject to any other gas gathering agreement or commitment and (iii) agrees not to deliver any Gas produced from the Dedicated Reserves and owned by Producer to any other gas gatherer, processor, or gas gathering system. Producer possesses the right to deliver the Dedicated Reserves to the Gathering System.

Amended and Restated Agreement, at ¶3.4, p. 8 (Exhibit 2).[2]

"Dedicated Reserves" is defined in the GPA as:

> [T]he interest of Producer in all Gas reserves in and under, and all Gas owned by Producer and produced or delivered from (i) the Leases[3] and (ii) other lands

---

[2] The natural gas subject to the GPA is "wet" gas. Wet gas must be processed prior to the gas entering a transportation pipeline to extract the natural gas liquids, which are sold separately. The remaining gas is "dry" gas (referred to as residue gas) and may enter intrastate pipelines for transport to other markets.

[3] The "Leases" under the GPA are comprised of over 400 oil and gas leases in which Producers own interests. *See* Schedule 3 to Amended and Restated Agreement, attached as Exhibit 2.

within the AMI,[4] whether now owned or hereafter acquired, along with the processing rights, subject to certain volume exclusions as described herein, and any and all additional right, title, interest, or claim of every kind and character of Producer or its Affiliates in (x) the Leases or (y) lands within the AMI, and Gas production therefrom, and all interests in any wells, whether now existing or drilled hereafter, on, or completed on, lands covered by a Lease or within the AMI.

*Id.* at ¶1.1, p. 2.

16. In exchange for Monarch's gas gathering and processing services, Producers agreed to pay a monthly fee along with other revenues and associated costs and expenses. *Id*. at ¶4.1, p. 9. The GPA contained Minimum Volume Commitments that obligated Producers to make deficiency payments to Monarch in the event their commitments of gas were less than a specified Quarterly Minimum Volume. *Id*. at ¶5.2, pp. 10-11. Terms governing these gathering and processing fees were amended by Amendment No. 1 and Amendment No. 2. *See* Amendment No. 1, subsection (e), p. 2 (Exhibit 3); Amendment No. 2, ¶4, pp. 3-4 (Exhibit 4).

17. The Amended and Restated Agreement originally obligated Producers to "commit[] $50,000,000.00 (gross) for drilling and completing new wells in the AMI." Amended and Restated Agreement, at ¶3.3(b), p. 8 (Exhibit 2). Production from these wells within the AMI would be subject to the GPA as "Dedicated Reserves." Under Amendment No. 2, the commitments were revised, and Producers agreed to drill and complete 15 additional wells in the AMI in exchange for incentive payments from Monarch. *See* Amendment No. 2, ¶1(a), pp. 1-2 (Exhibit 4).

18. The Amended and Restated Agreement, in conjunction with Producers' dedication of gas reserves and Monarch's processing services, also granted Monarch a right of way and easement affecting Producers' leasehold interests "for the purposes of installing, using,

---

[4] "AMI," or Area of Mutual Interest, is the geographical location reflected in Schedule 1 to the Amended and Restated Agreement, Exhibit 2.

6

inspecting, repairing, operating, replacing, and removing [Monarch's] facilities (including installation of new custody transfer meters and other equipment) used or useful in the performance of this Agreement." *See* Exhibit "A" to Amended and Restated Agreement, at ¶4 (Exhibit 2).

19. Significantly, the GPA expressly provides that the covenants in the agreement run with the land and are binding on Producers and their successors and assigns:

> Producer agrees to cause any existing or future Affiliates of Producer holding Dedicated Reserves to be bound by, and to execute and join as a party, this Agreement. The dedication and commitment made by Producer under this Agreement is a covenant running with the land.

Amended and Restated Agreement, at ¶3.4, p. 8 (Exhibit 2) (emphasis added).

20. A recording memorandum was also attached to the GPA. *See* Memorandum of Amended and Restated Gas Gathering and Processing Agreement, attached as Exhibit D to Amended and Restated Agreement (Exhibit 2). Like the GPA itself, the memorandum provided that the covenants contained in the Amended and Restated Agreement run with the land and are binding on all successors and assigns:

> This Memorandum and all rights and covenants in connection herewith shall run with the underlying Leases and associated lands and shall be binding upon the parties hereto and their respective successors and assigns.

*Id*. at ¶6 (emphasis added).

## II. The Produced Water Dedications and Commitments under the SWDA

21. The SWDA obligates Producers to commit and deliver all produced water extracted from oil and gas wells in certain areas within the AMI – known as the Wilkin Ridge and Riverbend Production Areas – to saltwater disposal facilities owned and operated by Monarch. *See* Agreement for Disposal of Salt Water, ¶2.1(a), p. 2 and Schedule A (Exhibit 4) .

7

22. In exchange for Monarch's disposal and treatment of the produced water from Producers' oil and gas wells, Producers agreed to pay disposal fees detailed in the SWDA. *Id*. at ¶3.1, p. 3.

23. The SWDA, similar to the GPA, provided that the commitments in the agreement run with the land and bind all successors and assigns:

> Gasco further agrees to cause any assignee of Gasco's now-existing leasehold to be bound by this Agreement. The commitment made by Gasco hereunder is a <u>covenant running with the land</u>.

*Id*. at ¶2.1(a), p. 2 (emphasis added).

### III. Badlands' Attempt to Sell All of its Assets "Free and Clear" of the GPA and SWDA

24. On August 11, 2017, Badlands and certain of its affiliates filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

25. On August 14, 2017, Badlands filed a *Motion for Entry of an Order (A) Approving the Purchase and Sale Agreement Between Badlands Production Company and the Successful Auction Bidder, (B) Authorizing the Sale of Substantially All of its Property Pursuant Thereto, Free and Clear of Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts, and (D) Granting Related Relief* (hereinafter, "Motion for Approval of Asset Sale") [Docket. No. 18, in Case 17-17465-KHT].

26. The Motion for Approval of Asset Sale identified Wapiti Utah (at the time called Wapiti Newco) as a "Stalking Horse Bidder" and potential purchaser of Badlands' assets.

27. Badlands and Wapiti Utah entered into a Purchase and Sale Agreement, dated August 7, 2017, by which Wapiti Utah proposes to purchase substantially all of Badlands' assets and assume specified contracts, liabilities and obligations of the debtor. Motion for Approval of

8

Asset Sale, at ¶¶8-9, pp. 2-3 and Exhibit "A" to the Motion [Docket. No. 18, in Case 17-17465-KHT].

28. Pursuant to the Purchase and Sale Agreement, Wapiti Utah proposes specifically to purchase all of Badlands' "Oil and Gas Interests," including the lease interests currently subject to the GPA and SWDA. Purchase and Sale Agreement, ¶1, p. 1, attached as Exhibit "A" to Motion for Approval of Asset Sale [Docket. No. 18, in Case 17-17465-KHT]. The Purchase and Sale Agreement, at the same time, provides that Wapiti Utah shall not assume liability under ***any*** contracts with Monarch in connection with the purchase of Badlands' assets, including the GPA and SWDA. *Id*. at ¶2(a), p. 3.

29. Among the additional relief sought by Badlands in its Motion for Approval of Asset Sale is an order pursuant to §363(f) of the Bankruptcy Code authorizing the sale of its assets "free and clear" of any liabilities not assumed by Wapiti Utah under the Purchase and Sale Agreement, which would include the GPA and SWDA. Motion for Approval of Asset Sale, at ¶¶33-35, pp. 13-14 [Docket. No. 18, in Case 17-17465-KHT].

30. Thus, by operation of the proposed asset sale to Wapiti Utah, Badlands seeks to effectively strip its lease interests of the contractual burdens imposed in the GPA and SWDA notwithstanding that both agreements contain dedications and commitments of hydrocarbons and produced water that are real covenants running with the land that remain binding on Badlands' successors.

31. On October 12, 2017, Wapiti Utah became the successful bidder of Badlands' assets and seeks to have the Purchase and Sale Agreement approved by the Bankruptcy Court. This will result in Wapiti Utah obtaining Badlands' assets free and clear of Monarch's rights and

9

interest and absolve Wapiti Utah of the contractual obligations contained in the GPA and SWDA.

## CLAIM FOR DECLARATORY JUDGMENT

32. Monarch restates and incorporates all allegations set forth in each of the preceding paragraphs as if fully set forth herein.

33. Covenants running with the land, as a matter of law and equity, are binding on successors-in-interest and thus are not "interests" under §363 of the Bankruptcy Code. Therefore, property owned by a bankruptcy debtor cannot be sold "free and clear" of covenants running with the land. See *In re Banning Lewis Ranch Co., LLC,* 532 B.R. 335, 347 (Bankr. D. Colo. June 22, 2015) (citing *In re Lonesome Pine Holdings, LLC,* Case No. 10-34560 HRT, 2011 Bankr. LEXIS 5775 (Bankr. D. Colo. Sept. 1, 2011)).

34. Monarch and Producers intended that the covenants in the GPA and SWDA run with the land. Both agreements expressly provide that Producers' dedications and commitments shall "run with the land."

35. The dedications of natural gas in the GPA, together with all associated commitments in the agreement, "touch and concern" Badlands' leasehold interests insofar as they closely relate to and affect the use, value and/or enjoyment of the interests.

36. The dedications of produced water in the SWDA, together with all associated commitments in the agreement, "touch and concern" Badlands' leasehold interests insofar as they closely relate to and affect the use, value and/or enjoyment of the interests.

37. The dedications and commitments contained in the GPA and SWDA constitute covenants running at law and in equity because the requisite intent exists by the express terms of the agreements, and the covenants "touch and concern" Badlands' lease interests.

38. Accordingly, Monarch is entitled to a judgment pursuant to 28 U.S.C. §§2201 and 2202 declaring that the covenants in the GPA and SWDA run with the land, as a matter of law and equity, and that Badlands' lease interests cannot be sold "free and clear" of the GPA and SWDA.

## CLAIM FOR BREACH OF CONTRACT

39. Monarch restates and incorporates all allegations set forth in each of the preceding paragraphs as if fully set forth herein.

40. Badlands is in breach of the GPA and SWDA for nonpayment of fees for gas which flowed through Monarch pipelines in an amount not less than $1.2 Million.

41. Since the GPA and SWDA are covenants running with the land and cannot be rejected, the agreements must be assigned to Wapiti Utah as part of the sale of Badlands' assets.

42. In order to assume and assign the agreements, the default must be cured pursuant to Bankruptcy Code §365(b)(1) and §365(f)(2).

43. In the alternative, the obligations under the GPA and SWDA, including the defaults, are obligations which Wapiti Utah is responsible for since they are covenants running with the land and Wapiti Utah is the owner of Badlands' assets.

44. Therefore, Wapiti Utah is responsible for payment of the breach by Badlands in an amount to be proved at trial but in any event not less than $1.2 Million.

## PRAYER FOR RELIEF

WHEREFORE, Monarch prays for a declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202 that the covenants contained in the GPA and SWDA run with the land, as a matter of law and equity, and that Badlands' lease interests cannot be sold "free and clear" of the GPA and SWDA under 11 U.S.C. §363 of the Bankruptcy Code or otherwise. Monarch also requests that the monetary defaults of the GPA and SWDA be cured in order to have the agreements be assigned to Wapiti Utah under 11 U.S.C. §365, or for money damages against Wapiti Utah as a result of the breach. Monarch additionally prays for such further relief to which it is justly entitled.

Dated: October 23, 2017

Respectfully submitted,

**Beatty & Wozniak P.C.**
/s/ *Tyler L. Weidlich*
Karen L. Spaulding, #16547
Tyler L. Weidlich
216 16th Street, Suite 1100
Denver, CO 80202-5115
Ph: (303) 407-4499
Fax: (303) 407-4494
kspaulding@bwenergylaw.com
tweidlich@bwenergylaw.com

and

**Minor & Brown P.C.**
/s/ *David M. Rich*
David M. Rich, #15211
650 S. Cherry Street, Suite 1100
Denver, CO 80246-1801
Ph: (303) 376-6020
Fax: (303) 320-6330
drich@minorbrown.com

*Attorneys for Monarch Midstream, LLC*