# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | Case No. 17-17465-KHT |
| | ) | |
| BADLANDS ENERGY, INC., et al., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Jointly Administered Under |
| | ) | **Case No. 17-17465-KHT** |
| | ) | |
| MONARCH NATURAL GAS, LLC, n/k/a MONARCH MIDSTREAM, LLC, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | Adversary No. 17-01429 KHT |
| BADLANDS PRODUCTION COMPANY, f/k/a GASCO PRODUCTION COMPANY, BADLANDS ENERGY INC., f/k/a GASCO ENERGY, INC., and WAPITI UTAH, LLC f/k/a WAPITI NEWCO, LLC, | ) ) ) ) ) ) | |
| Defendants | ) | |

### MONARCH NATURAL GAS, LLC'S OPPOSITION TO WAPITI UTAH, L.L.C.'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Monarch Natural Gas, LLC ("Monarch"), through undersigned counsel, respectfully submits its Opposition to the Motion for Judgment on the Pleadings filed by Wapiti Utah, L.L.C. ("Wapiti Utah") on January 25, 2018. In connection with this Opposition, Monarch adopts and incorporates the arguments, points and authorities advanced in its Motion for Summary Judgment filed contemporaneously herewith.

### INTRODUCTION

Wapiti Utah's primary contention in its Motion is that it lawfully purchased the assets of the debtor, Badlands Production Company ("Badlands"), "free and clear" of any claims and obligations in the Gas Gathering and Processing Agreement (as amended) ("GPA") and the

Agreement for Disposal of Salt Water ("SWDA") by operation of 11 U.S.C. §363(f). Bankruptcy and state laws are clear, however, that §363(f) does not apply to contracts containing covenants running with the land, such as the mineral reserves and salt water dedications contained in the GPA and SWDA, respectively. Wapiti Utah overlooks this core principle in its Motion, which renders all of its related arguments flawed as a matter of law. Accordingly, the Motion should be denied.

## DISCUSSION

**I.  The Dedications in the GPA and SWDA Run With the Land as a Matter of Law and Equity.**

Covenants run with the land under Utah law if (1) they are intended by the covenanting parties to run with the land; (2) they "touch and concern" the land; and (3) privity of estate exists.[1] Likewise, a covenant constitutes an equitable servitude – i.e., it runs with the land "in equity" – only if the requirements of intent and touch and concern are satisfied.[2] A successor-in-interest is bound to a covenant if it is found to run with the land in law or in equity.[3] Here, Wapiti Utah argues only that the dedications in the GPA and SWDA do not "touch and concern" the land, and it does not contest the remaining elements required for a covenant to run with the land at law or equity.

---

[1] *Flying Diamond Oil Corp. v. Newton Sheep Co*., 776 P.2d 618, 623 (Utah 1989). Under Colorado law, a covenant runs with the land if the requirements of intent and touch and concern are satisfied. *Reishus v. Bullmasters*, LLC, 2016 COA 82, ¶38 (Colo. App. May 19, 2016).

[2] *Flying Diamond Oil Corp.*, 776 P.2d at 623, fn. 6.

[3] *See id.*

### A. Wapiti Utah's Motion for Judgment on the Pleadings Should Be Converted to a Motion for Summary Judgment.

Utah law governing covenants running with the land, as it applies to this case, implicates evidence beyond the allegations in Monarch's complaint, including evidence addressed to the parties' contractual intent and expectations, all of which have a bearing on whether the GPA and SWDA "touch and concern" the land. Accordingly, Monarch has filed a Motion for Summary Judgment contemporaneously with this Opposition, which demonstrates that the covenants in the GPA and SWDA touch and concern and otherwise run with the land at law and equity.

Rule 12(d) of the Federal Rules of Civil Procedure provide that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion <u>must</u> be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given reasonable opportunity to present all the material that is pertinent to the motion."[4] Therefore, pursuant to Rule 12 (d), Wapiti Utah's Motion for Judgment on the Pleadings should be treated as a motion for summary judgment.

### B. The Covenants in the GPA and SWDA Touch and Concern the Land.

The covenants in the GPA and SWDA touch and concern the land insofar as they "affect the use, value, or enjoyment" of the Producers' real property mineral interests.[5] Further, the New York authority upon which Wapiti Utah solely relies in its Motion, *Eagle Enterprises, Inc. v. Gross*[6] and *In re Sabine Oil & Gas Corporation*,[7] is both factually and legally distinguishable. Monarch will not re-hash these arguments in this brief and, as stated, hereby adopts and

---

[4] Fed. R. Civ. Proc. 12(d) (emphasis added); *see also Micale v. Bank One N.A. (Chicago)*, 382 F. Supp. 2d 1207, 1216 (D. Colo. 2005).

3

incorporates the points, arguments and authorities advanced in its Motion for Summary Judgment in their entirety.

## II. Wapiti Did Not Purchase Badlands' Assets Free and Clear of Covenants Running With the Land.

Covenants that run with the land, such as those in the GPA and SWDA, "bind successive owners of the burdened or benefited land."[8] Critically, bankruptcy law, including 11 U.S.C. §363 and §365, do not trump this well-settled principle of property law.

In *In re Lonesome Pine Holdings, LLC*,[9] the United States Bankruptcy Court for the District of Colorado concluded that a debtor may not sell property free and clear of covenants running with the land under §363(f). The Court held that covenants running with the land "create equitable interests that do not compel a person to accept a monetary interest; thus, when restrictive covenants are involved, there is nothing that can force those who benefit from restrictive covenants to 'forego equitable relief in favor of a cash award.'"[10] This ruling was reiterated by this Court in *In re Banning Lewis Ranch Co., LLC*,[11] and is aligned with holdings from other jurisdictions.[12] The term "interest" does not include real covenants.

---

[5] *Flying Diamond Oil Corp.*, 776 P.2d at 623-624.

[6] 349 N.E.2d 816 (N.Y. 1976).

[7] 547 B.R. 66 (Bankr. S.D.N.Y. 2016), *aff'd* 567 B.R. 869 (S.D.N.Y 2017).

[8] *Stern v. Metro. Water Dist*., 274 P.3d 935, 945 (Utah 2012).

[9] No. 10-34560 HRT, 2011 Bankr. LEXIS 5775, *9 (Bankr. D. Colo. Sept. 1, 2011) (restrictive covenants "are not 'interests' that fall within § 363").

[10] *Id.* at *9-10.

[11] 532 B.R. 335, 345-46 (Bankr. D. Colo. 2015).

[12] *Gouveia v. Tazbir*, 37 F.3d 295, 298-299 (7th Cir. 1994) (because covenants running with land are interests in property, rather than executory contracts which can be rejected, 11 U.S.C. §§ 363 and 365 of the Bankruptcy Code are inapplicable); *Skyline Woods Homeowners Ass'n, Inc. v. Broekemeier*, 758 N.W.2d 376, 392 & n.36 (Neb. 2008) ("The courts addressing whether a [debtor] may sell property of an estate free and clear of restrictive covenants under § 363(f) have all concluded that such a sale is not permitted.") (citing *Gouveia v. Tazbir*, 37 F.3d 295 (7th Cir.

Indeed, Wapiti Utah offers no grounds to satisfy subsections (1) and (5) even if §363 applied to real covenants running with the land (which it does not as a matter of law). Subsection (1) allows property to be sold free and clear if applicable non-bankruptcy law permits such a sale.[13] Utah law is clear, however, that property interests subject to a real covenant running with the land cannot be sold free and clear of the burdens: again, real covenants "bind successive owners of the burdened or benefited land."[14] The only authority that Wapiti Utah cites is a statute related to mortgage and lien foreclosures, which is wholly irrelevant in this context.[15]

Subsection (5), in turn, allows property to be sold free and clear if the "entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."[16] No relevant Utah law supports the proposition that "Monarch's interests could be satisfied by a money judgment for damages," as Wapiti Utah contends.[17] In this regard, the only authority cited by Wapiti Utah on this point is *Cent. Utah Water Conservancy Dist. v. Upper East Union Irrigation Co.*;[18] however, this case addresses an ordinary breach of contract claim and does not even involve a real covenant running with the land. The footnote to which Utah cites merely states the legal standard for the remedy of specific performance in relation to monetary damages

---

1994); *In re WBQ Partnership*, 189 B.R. 97 (Bankr. E.D.Va. 1995); *In re Oyster Bay Cove, Ltd*., 161 B.R. 338 (Bankr. E.D.N.Y. 1993); *In re 523 E. Fifth St. Housing Pres. Dev. Fund*, 79 B.R. 568 (Bankr. S.D.N.Y. 1987).

[13] 11 U.S.C. § 363(f)(1).

[14] *Stern v. Metro. Water Dist*., 2012 UT 16, ¶ 21, 40; 274 P.3d 935 (Utah 2012).

[15] *See* Utah Code § 78B-6-903.

[16] 11 U.S.C. § 363(f)(5).

[17] Wapiti Utah's Motion for Judgment on the Pleadings, at p. 11, ¶36 [R. Doc. No. 22].

[18] 2013 UT 67, 321 P.3d 1113 (Utah 2013).

in context of a breach of contract claim.[19] Wapiti Utah cannot satisfy the requirements of subsection (1) or (5).

Bankruptcy law classifies Monarch's interests in the GPA and SWDA as "property rights" – not "simply contractual rights," as Wapiti Utah asserts[20] – that are in all events not subject to a free and clear sale under §363 (or rejection under §365).[21] Wapiti Utah's arguments to the contrary are simply unfounded.[22]

### III. Wapiti Utah Must Assume the GPA and SWDA, in Their Entirety, As Covenants Running With the Land.

Equally unavailing is Wapiti Utah's assertion that "only specific terms within a contract can qualify as a real covenant."[23] The Bankruptcy Code requires the assumption or rejection of a contract in its entirety.[24] More specifically, where a contract contains non-severable, "interdependent" provisions, the contract must be accepted or rejected as a whole.[25] A contract

---

[19] *Cent. Utah Water Conservancy Dist.*, 2013 UT at *46, fn. 3 ("[s]pecific performance is not typically ordered if damages are sufficient to protect the injured party's expectation interest….").

[20] Wapiti Utah's Motion for Judgment on the Pleadings, at p. 11, ¶36 [R. Doc. No. 22].

[21] *Gouveia*, 37 F.3d at 298 (in ruling §363 applicable, the court observed "although restrictive covenants (such as the one here at issue) may contain the characteristics of both a contract and an interest in real estate, the primary nature of such covenants is not contractual but rather a property interest."); *see also In re Banning Lewis Ranch Co., LLC*, 532 B.R. at 347.

[22] The only authority Wapiti Utah cites as support in attempting to apply §363 to this case is *In re Energytec, Inc.*, 739 F.3d 215 (5th Cir. 2013). In that case, the court merely remanded the case to the district court to determine whether the debtor could sell a pipeline free and clear of certain real covenants under §363. The court did not even address whether such relief could be awarded. In any event, the courts that have actually addressed the issue, including the Bankruptcy Court for the District of Colorado, clearly hold §363 to be inapplicable to real covenants running with the land.

[23] Motion for Judgment on the Pleadings, at ¶33, p. 10 [R. Doc. No. 22].

[24] *In re Cafeteria Operators, L.P.*, 299 B.R. 384, 388 (Bankr. N.D. Tex. 2003) ("Under §365 of the Bankruptcy Code, the general rule is that the debtor must assume or reject a contract in its entirety.").

[25] *See In re Storage Technology Corp.*, 53 B.R. 471, 475-476 (Bankr. Colo. 1985); *DB Structured Prods. v Am. Home Mortg. Holdings, Inc. (In re Am. Home Mortg. Holdings, Inc.)*, 402 B.R. 87, 98 (Bankr. Del. 2009) ("*Cum onere* principle applies equally to transfer of rights and obligations under non-executory contract pursuant to 11 USCS § 363 as to assumption and assignment of contracts and leases pursuant to 11 USCS § 365"); *In re Ecoventure Wiggins Pass, Ltd.*, 406 B.R. 115 (Bankr. M.D. Fla. 2009) (Debtor could not sever Purchase and Sale

is severable under Utah law only when it contains more than one separate and distinct performance obligation and the consideration is apportioned accordingly. In *Brown v. Board of Educ.*,[26] the Utah Supreme Court held:

> This court has repeatedly addressed itself to the question of severability of agreements and the enforceability of the parts if severable. Fundamental to such considerations are basic contract principles as to the parties' intent which is derived from looking at the entire contract and the relationship of the parts to the whole and whether it was intended that the total agreement be severable. In exploring a contract on this issue the fact finder '...may and should look to extraneous evidence concerning the background and surrounding circumstances in order to make that determination.
>
> ***
>
> The distinguishing mark of a divisible contract is that it admits of apportionment of the consideration on either side so as to correspond to the unascertained consideration on the other side. Where such a purpose appears in the contract or is clearly deducible therefrom, it is allowed great significance in ascertaining the intention of the parties.[27]

Here, the GPA and SWDA comprise one contractual objective – the dedication by the Producers of their mineral reserves and produced water to Monarch in exchange for gathering and disposal services at Monarch's facilities for a recurring fee. With regard to the GPA, the Producers made additional commitments in furtherance of the contract's objective, including agreeing to certain drilling commitments and conveying an easement and purchase option to Monarch.[28] <u>No division of compensation or allocation of consideration is contemplated in the GPA or SWDA</u>. To the contrary, absent the Producers' dedication covenants and the reciprocal

---

Agreement and related Accommodation Agreement because they constituted a "single, non-severable contract;" the agreements had to be construed as a single contract because: (1) they were executed at or near same time, (2) they concerned the same subject matter, and (3) there was no indication in the Accommodation Agreement was intended to stand alone, independent of the Purchase and Sale Agreement.).

[26] 560 P.2d 1129 (Utah 1977).

[27] *Id*. at 1131.

[28] *See* <u>Monarch's Motion for Summary Judgment</u>, filed February 22, 2018, at ¶¶15-23, pp. 7-10.

gathering and disposal commitments by Monarch, there is absolutely no separate purpose for the other provisions in the agreements.[29]

"It is black letter law that the Bankruptcy Code requires assumption of an entire agreement. Additionally, a debtor cannot avoid the effect of this rule by construing various parts of a transaction as separate agreements when they are clearly interdependent."[30] The GPA and SWDA contain non-severable and interdependent provisions and must be enforced as covenants running with the land as against Wapiti Utah in their entirety.

## IV. Wapiti Must Cure Badlands' Pre-Petition Defaults in Connection with the Acquisition of Badlands' Assets and Assumption of the GPA and SWDA.

Since Wapiti Utah cannot purchase Badlands' assets "free and clear" under §363, it is obligated to cure Badlands' pre-petition default. The bankruptcy court has discretion whether to grant the sale of the debtor's property free of liens and encumbrances, but the order may provide that the property remain subject to certain claims.[31]

The covenants in the GPA and SWDA run with the land, as discussed below and in Monarch's Motion for Summary Judgment, and thus Badlands' assets cannot be purchased by Wapiti Utah free and clear under §363(f). Under the Court's Sale Order, issued on October 26, 2017, Wapiti Utah agreed that "if it is determined that Monarch has an interest in the Property

---

[29] *See, e.g.*, Amended and Restated Agreement, at Recitals, p. 1; Exhibit A, Additional Terms and Conditions (providing "[t]he following terms and conditions shall apply to the gathering of [Badlands'] Gas on the Gathering System," including the grant of an easement and right of way); Schedule 4, Purchase Option (granting the purchase option "[i]n consideration of the mutual covenants and restrictions granted in this Agreement and consummation of the transactions contemplated in the Asset Purchase Agreement"), attached as Exhibit 2 to Monarch's Complaint [R. Doc. No. 1]. *See also* SWDA, at p. 1, Recitals ("in consideration of the promises and mutual covenants contained here, the Parties hereto covenant and agree as follows"), attached as Exhibit 5 to Monarch's Complaint [R. Doc. No. 1].

[30] *In re Storage Technology Corp.*, 53 B.R. at 475-476.

[31] *In re Jaussi*, 488 B.R. 456, 459 (Bankr. D. Colo. 2013) (denying motion to approve sale of real estate free and clear of liens where party failed to establish elements of § 363(f)); *see Bee-Gee, Inc. v. Ariz. Dep't of Econ. Sec.*, 690 P.2d 129, 132 (Ariz. Ct. App. 1984).

8

that cannot be sold free and clear under Section 363(f) of the Bankruptcy Code then such interest shall be deemed a Permitted Encumbrance under this Sale Order."[32] The Sale Order expressly recognizes that the property is conveyed to Wapiti Utah *subject to* the "Permitted Encumbrances" created by the GPA and SWDA.[33] Furthermore, if it is determined that the GPA and the SWDA cannot be sold free and clear, Wapiti Utah "will be responsible for the obligations under the agreements, including any pre-petition obligations that cannot be sold free and clear or that the Court otherwise determines must be cured by [Wapiti Utah]."[34] Wapiti Utah has not purchased the assets free and clear under § 363(f).

## CONCLUSION

For the foregoing reasons, Monarch requests that the Court deny Wapiti Utah's Motion for Judgment on the Pleadings.

---

[32] R. Doc. No. 223 at ¶Z, p. 10.

[33] *See id.* at ¶7, p. 14.

[34] *Id.* at ¶39.

9

Dated: February 22, 2018.

                    Respectfully submitted,

                    Beatty & Wozniak P.C.

/s/ *Tyler L. Weidlich*
Karen L. Spaulding, #16547
Tyler L. Weidlich, #51706
216 16th Street, Suite 1100
Denver, CO 80202-5115
Phone: (303) 407-4499
Fax: (303) 407-4494

kspaulding@bwenergylaw.com
tweidlich@bwenergylaw.com

      and

Minor & Brown P.C.

*/s/ David M. Rich*
David M. Rich, #15211
650 S. Cherry Street, Suite 1100
Denver, CO 80246-1801
Ph: (303) 376-6020
Fax: (303) 320-6330
drich@minorbrown.com

Attorneys for Monarch Natural Gas, LLC

## CERTIFICATE OF SERVICE

I certify that on February 22, 2018, a copy of this **MONARCH NATURAL GAS, LLC'S OPPOSITION TO WAPITI UTAH, L.L.C.'S MOTION FOR JUDGMENT ON THE PLEADINGS** was filed and served using the Court's CM/ECF filing system which will send notification to the parties who have entered an appearance, including:

| | |
|---|---|
| Theodore J. Hartl, Esq. | Kyung S. Lee, Esq. |
| 600 17th Street | Charles M. Rubio |
| Suite 1800 South | Diamond McCarthy LLP |
| Denver, CO 80202 | 909 Fannin, 37th Floor |
| thartl@linquist.com | Two Houston Center |
| | Houston, TX 77010 |
| | klee@diamondmccarthy.com |
| | crubio@diamondmccarthy.com |

/s/ *David M. Rich*

11