# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BADLANDS ENERGY, INC. | ) | Case No. 17-17465 KHT |
| EIN: 98-0204105, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| BADLANDS PRODUCTION COMPANY | ) | Case No. 17-17467 KHT |
| EIN: 84-1461816, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| BADLANDS ENERGY-UTAH, LLC | ) | Case No. 17-17469 KHT |
| EIN: 47-2023934, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| MYTON OILFIELD RENTALS, LLC | ) | Case No. 17-17471 KHT |
| EIN: 20-1202389, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | **Jointly Administered Under** |
| | ) | **Case No. 17-17465 KHT** |

| | | |
|---|---|---|
| MONARCH MIDSTREAM, LLC, f/k/a | ) | Adversary Proceeding |
| MONARCH NATURAL GAS, LLC, | ) | No. 17-1429-KHT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BADLANDS PRODUCTION | ) | |
| COMPANY, f/k/a GASCO | ) | |
| PRODUCTION COMPANY, a | ) | |
| Colorado corporation; BADLANDS | ) | |
| ENERGY INC., f/k/a GASCO | ) | |
| ENERGY, INC., a Colorado | ) | |
| corporation; and WAPITI UTAH, | ) | |
| L.L.C. f/k/a WAPITI NEWCO, L.L.C., | ) | |
| a Delaware limited liability company, | ) | |
| | ) | |
| Defendants. | | |

### WAPITI UTAH, L.L.C.'S REPLY TO MONARCH'S RESPONSE TO WAPITI UTAH, L.L.C.'S MOTION FOR JUDGMENT ON THE PLEADINGS

Wapiti Utah, L.L.C. f/k/a Wapiti Newco, L.L.C. ("Utah LLC") files this Reply ("Reply") in support of its Motion for Judgment on the Pleadings (the "Motion") pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and would respectfully show the following:

### I. SUMMARY OF ARGUMENT

1. Assuming Monarch's allegations as true, Utah LLC moved for judgment on the pleadings because Monarch cannot establish that: (i) Utah LLC should be held responsible for curing amounts Badlands owes to Monarch before Badlands filed chapter 11, or (ii) the dedication and commitment in the Contracts touch and concern and thus run with the Assets.

2. Nothing in the Bankruptcy Code makes Utah LLC liable to pay the pre-petition amounts that Badlands owes to Monarch. Regardless of whether the Contracts create valid real covenants, Monarch's pre-petition claim against Badlands ("Monarch's Unsecured Claim")[1] is not a property interest that attaches to the Assets.

3. Indeed, Monarch never alleges in the Complaint that Monarch's Unsecured Claim burdens the Assets. Even if Monarch had made such allegation, Monarch's Unsecured Claim is subject to a free and clear sale under § 363(f) because it can be satisfied by a money judgment. Monarch cannot dispute this point since it is seeking a money judgment on Monarch's Unsecured Claim *in this Adversary Proceeding, which Monarch commenced.*

---

[1] Capitalized terms not otherwise defined in this Reply have the definition given to them in the Motion.

2

4. Monarch's contention that Utah LLC must assume the Contracts because they are real covenants is without basis in law or fact. ECF No.26 at 6. Under Bankruptcy Code § 365, only the debtor, not Utah LLC, can assume, assign, or reject the Contracts. Monarch ignores this point, conveniently meandering between claiming that the Contracts are real property interests unaffected by bankruptcy and, at the same time, stating that they are executory contracts governed by Bankruptcy § 365.

5. Under the sale, Utah specifically did not assume the Contracts. Thus, Monarch's argument that the Bankruptcy Code requires Utah LLC to assume the Contracts because they are real covenants has absolutely no legal basis under Bankruptcy Code.

6. In seeking to apply Federal Rule of Civil Procedure 12(d) to the instant dispute, Monarch summarily states that the Motion "implicates evidence beyond the allegations in Monarch's complaint, including evidence addressed to the parties' contractual intent and expectation." This is not true.

7. Utah LLC's Motion is based on the free and clear principle of § 363(f), and the only relevant facts concern the "interests" that may be sold free and clear. Utah LLC's Motion accepts Monarch's allegations as true, in particular the existence of the Contracts and the Claims which Monarch alleges cannot be sold free and clear. The Motion does not reference anything beyond the Complaint, and thus Rule 12(d) is not implicated.

8. Finally, in the interest of avoiding duplication, Utah LLC's arguments regarding the "touch and concern" requirement will appear in its Opposition to Monarch's Motion for Summary Judgment. Utah LLC incorporates those arguments into this Reply by reference.

## III. ARGUMENT

### A. Monarch's Claims Against Utah LLC.

9. Before responding to specific points made by Monarch in their Response, Utah LLC believes it is first important to look back and determine which claims Monarch has brought against Utah LLC. The Complaint brings two claims against Utah LLC: (i) a request for a declaration that "the covenants in the GPA and SWDA run with the land, as a matter of law and equity, and that Badlands' lease interests cannot be sold 'free and clear' of the GPA"; and (ii) a claim for breach of contract based on the theory that "the obligations under the GPA and SWDA, including the defaults, are obligations which [Utah LLC] is responsible for since they are covenants running with the land and [Utah LLC] is the owner of Badlands' assets."

10. In short, Monarch claims that the dedications and commitments in the Contract run with the land, and as a result Utah LLC is liable for Monarch's Unsecured Claim. However, neither contention is correct.

### B. Utah LLC Does Not Have to Cure Badlands' Pre-Petition Default.

11. First, Monarch has no basis for arguing that Utah LLC must pay $1,200,000 to satisfy Monarch's Unsecured Claim. Monarch does not and cannot dispute that Utah LLC and Monarch are not parties to any contracts. Thus, Monarch concedes that Utah LLC is not liable to Monarch for breach of contract in any traditional sense.

12. Instead, Monarch's breach of contract theory is that Monarch's Unsecured Claim somehow burdens the Assets. This argument conflates real covenants with the claims that arise from them. **Even if a contractual covenant amounts to a property interest, claims arising from such a covenant are not *ipso facto* property interests**. In other words, even if Monarch

were correct that the Contracts create real covenants, it would not follow that the obligation to pay Monarch for past services attaches to the Assets.

13. Before filing for bankruptcy, Badlands fulfilled its promise to deliver gas and water to Monarch. Monarch presumably gathered and processed those materials as required. By failing to *pay* Monarch for those services, Badlands merely incurred personal liability (i.e., a claim) for the amounts owed.[2] Monarch cites no authority explaining why such a claim would become an interest in the Assets.

14. The Complaint never alleges that the Claim is an interest in real property.[3] Rather, the Complaint states that Badlands's "defaults" are "covenants running with the land."

15. The Complaint only asks for a declaration that the "dedication of natural gas in the GPA [and dedication of produced water in the SWDA], together with all associated commitments in the agreement[s]" are covenants running with land, while treating Badlands's default as a claim for breach of contract. Complaint at 10–11.

16. The Complaint implicitly recognizes that Monarch's Unsecured Claim is a claim, not a property interest in the Assets. Accordingly, Monarch's Unsecured Claim does not attach to the Assets or cloud Utah LLC's title to them.

17. Even if Monarch articulated some theory for why Monarch's Unsecured Claim is a property interest, the Claim would nevertheless be subject to a free and clear sale. *See* 11 U.S.C. § 101(5); *In re PBBPC, Inc.*, 484 B.R. 860, 869 (B.A.P. 1st Cir. 2013); *In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d Cir. 2003). Under Bankruptcy Code § 363(f)(5), a debtor can

---

[2] The Court can accept these allegations as true for purposes of the Motion.

[3] Monarch in fact states the opposite. In attempting to distinguish the *Central Utah Water Conservancy District* case, Monarch notes that the case "addresses an ordinary breach of contract claim and does not even involve a real covenant running with the land." *See* Response at 5, second paragraph. Thus, Monarch acknowledges that real covenants and claims are different things subject to different rules.

sell property free and clear of any interest in such property if the interest holder "could be compelled . . . to accept a money satisfaction of such interest."

18. The Claim can be satisfied with money. Monarch must concede this point since the *Complaint* (filed by Monarch) seeks to compel Badlands (and Utah LLC) to pay Monarch's Unsecured Claim. Thus, Monarch's Unsecured Claim would be subject to a free and clear sale even if it somehow burdened the Assets.

19. Monarch's only stated basis for pinning liability for Monarch's Unsecured Claim on Utah LLC is Monarch's tendentious misinterpretation of this Court's order approving the sale of the Assets. In that order, the Court stated that **if** the Debtor cannot sell free and clear of the Contracts, Utah LLC will be responsible for any pre-petition obligations **that cannot be sold free and clear**. But as explained above, Monarch's Unsecured Claim is a pre-petition obligation that **can** be sold free and clear, either because it does not burden the Assets or can be satisfied with money.

20. In effect, Monarch is citing the Court's acknowledgement of a possible outcome as evidence that the outcome has been realized. The Court should reject Monarch's contorted interpretation of the Sale Order and find that Utah LLC cannot be liable for Monarch's Unsecured Claim.

### C. Utah LLC Does Not Have to Assume the Contracts.

21. Monarch also incorrectly claims that Utah LLC is liable for Monarch's Unsecured Claim because Bankruptcy Code § 365 requires Utah LLC to assume the Contracts.

22. The Response does not dispute the basic mechanics of § 365, namely that only Badlands can assume, reject, or assign the Contracts. *See In re Hernandez*, 287 B.R. 795, 803 (Bankr. D. Ariz. 2002); *see also In re Rollins*, 175 B.R. 69, 77 (Bankr. E.D. Cal. 1994).

Badlands has not yet made any such decisions. Nevertheless, Monarch argues that because the Contracts contain real covenants, they must be assumed under § 365.

23. This argument is thoroughly confused. Covenants running with the land are not executory contracts. *See In re Topco, Inc.*, 894 F.2d 727, 739 n.17 (5th Cir. 1990); *In re Beeter*, 173 B.R. 108, 114 (Bankr. W.D. Tex. 1994). Monarch notes this in footnote 12 of its Response where it states "because covenants running with the land are interests in property, rather than executory contracts which can be rejected, 11 U.S.C. §§ 363 and 365 of the Bankruptcy Code are inapplicable." Thus, Monarch concedes that bona fide real covenants fall outside the scope of § 365. As a result, it makes no sense for Monarch to state that the Contract must be assumed under § 365 because they are real covenants.

24. If the Contracts are subject to § 365, only the debtor can assume them; if they are real covenants, then § 365's rules for assuming or assigning contracts do not apply. Monarch does not cite to any authority showing that an executory contract must be assumed. The Court should reject Monarch's self-contradictory argument on this point and hold that Utah LLC is not liable for Monarch's Unsecured Claim.

**D. Rule 12(d) Does Not Apply.**

25. Rule 12(d) states that "if, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

26. Here, Monarch summarily claims that the Motion "implicates evidence beyond the allegations in Monarch's complaint, including evidence addressed to the parties' contractual intent and expectations." However, the standard under Rule 12(d) is not whether a Rule 12(c)

motion "implicates" matters outside the pleadings. Rather, it is whether such a motion *presents* matters outside the pleadings.

27. The Motion accepts Monarch's well-pleaded allegations as true and cites the Contracts, which are likewise cited in the Complaint. Nothing outside the pleadings is presented.

28. Monarch claims that Rule 12(d) applies because "the parties' contractual intent and expectations . . . have a bearing on whether the GPA and SWDA 'touch and concern' the land." The parties' intent and expectations are reflected in the Contracts themselves. Moreover, as Monarch acknowledges, the Motion does not contest the intent element required for covenants running with the land. Monarch is once again trying to have it both ways, claiming that intent is not at issue while simultaneously saying it is.

29. The Motion does not reference or present anything beyond the Complaint or the Contracts. Thus Rule 12(d) does not apply.

## V. CONCLUSION

For the reasons stated above, Utah LLC, the buyer, respectfully requests that the Court render a judgment pursuant to Rule 12(c) (i) denying Monarch's requested relief, (ii) ruling that Monarch is barred from proceeding with any action against Utah LLC (or any of its successors or assigns) to (A) collect any claims Monarch has against the Debtor or (B) enforce the terms of the GPA and the SWDA; and (iii) providing for such other relief as may be just and proper.

Dated: March 8, 2018.

DIAMOND MCCARTHY LLP

*/s/ Kyung S. Lee*
Kyung S. Lee
klee@diamondmccarthy.com
Charles M. Rubio
crubio@diamondmccarthy.com
Michael D. Fritz

8

mfritz@diamondmccarthy.com
909 Fannin, Suite 3700
Houston, TX 77010
Telephone: 713-333-5100
Facsimile: 713-333-5199

*Attorneys for Wapiti Utah L.L.C.*
*f/k/a Wapiti Newco, LLC*