# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: <br><br> BADLANDS ENERGY, INC. <br> EIN: 98-0204105, <br><br> Debtor. | Case No. 17-17465 KHT <br> Chapter 11 |
| In re: <br><br> BADLANDS PRODUCTION COMPANY <br> EIN: 84-1461816, <br><br> Debtor. | Case No. 17-17467 KHT <br> Chapter 11 |
| In re: <br><br> BADLANDS ENERGY-UTAH, LLC <br> EIN: 47-2023934, <br><br> Debtor. | Case No. 17-17469 KHT <br> Chapter 11 |
| In re: <br><br> MYTON OILFIELD RENTALS, LLC <br> EIN: 20-1202389, <br><br> Debtor. | Case No. 17-17471 KHT <br> Chapter 11 <br><br> **Jointly Administered Under** <br> **Case No. 17-17465 KHT** |
| MONARCH MIDSTREAM, LLC, f/k/a <br> MONARCH NATURAL GAS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BADLANDS PRODUCTION COMPANY, f/k/a GASCO PRODUCTION COMPANY, a Colorado corporation; BADLANDS ENERGY INC., f/k/a GASCO ENERGY, INC., a Colorado corporation; and WAPITI UTAH, L.L.C. f/k/a WAPITI NEWCO, L.L.C., a Delaware limited liability company, <br><br> Defendants. | Adversary Proceeding <br> No. 17-1429-KHT |

## WAPITI UTAH, L.L.C.'S OPPOSITION TO
## MONARCH'S MOTION FOR SUMMARY JUDGMENT AND OBJECTION TO
## MATERIALS IN SUPPORT THEREOF

Wapiti Utah, L.L.C. f/k/a Wapiti Newco, L.L.C. ("Utah LLC") files this Opposition to Monarch Midstream, LLC's ("Monarch") Motion for Summary Judgment (the "MSJ"), and Objection to Materials in Support Thereof (the "Response") and would respectfully show the following:

### I. SUMMARY OF ARGUMENT

1. In its MSJ, Monarch contends that the Court must consider evidence outside the pleadings to adjudicate Utah LLC's Motion for Judgment on the Pleadings. *See* ECF No. 22. However, the affidavits that Monarch attaches to its MSJ are *irrelevant* to the issue of whether the Riverbend assets that Utah LLC purchased (the "Assets")[1] are subject to certain covenants contained in contracts between the Debtor and Monarch. Specifically, both the expert affidavit and the affidavit from Monarch's CFO provide information that is either unnecessary (e.g., a survey of the sectors in the oil-and-gas industry) or obvious (e.g., Monarch Midstream, LLC is a midstream company). Because such evidence does not relate to the "touch and concern" or other elements necessary for a covenant to run with the land, Utah LLC submits that the Court should disregard it and asks that such materials not be considered in any rulings on the MSJ.

2. Monarch's presentation of this evidence also violates applicable Federal and Bankruptcy Rules of Procedure. Monarch has never disclosed its two witnesses and never provided an expert report. The Court cannot consider the affidavits of undisclosed witnesses on a motion for summary judgment.

3. If the Court determines that such evidence should be considered, Utah LLC would

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the MSJ.

2

submit that Monarch's MSJ is premature. The Court has not yet entered a scheduling order, and neither party has taken any discovery. Thus, Utah LLC has not had an opportunity to cross-examine Monarch's witnesses or take discovery relevant to its defense. The Court should allow time for discovery to take place before ruling on the MSJ.

4. Finally, Monarch's MSJ fails on the merits. The MSJ seeks summary judgment solely on Monarch's claim for a declaration that the dedication in the GPA and the commitment in the SWDA (collectively, the "Contracts") are covenants running with the land. ***Monarch makes conclusory statements about Utah law concerning covenants running with the land, without providing citations for or explaining how a service contract to transport personal property is converted into a real property interest that runs with the land***.

5. First, Monarch focuses much of its attention on the term "dedication," claiming that it creates a real covenant. In practical terms, however, a dedication (or "commitment" in the case of the SWDA) is simply a promise by one party to purchase services from the other. Such promises are merely personal covenants.

6. Second, the alleged real covenants[2] relate to personal property, not real property. Extracted gas is not a mineral and thus not real property. *See Patterson v. Wilcox*, 358 P.2d 88, 90 (Utah 1961). Water is likewise not a mineral. *Stephen Hays Estate, Inc., v. Togliatti*, 38 P.2d 1066, 1068 (Utah 1934). Because the covenants in question do not govern real property, such covenants do not touch or concern the Assets.

7. Third, the cases upon which Monarch relies are distinguishable and cannot be relied on as a basis to grant relief in favor of Monarch. The recent decision in *In re Sabine Oil &*

---

[2] This Response uses the terms "real covenant" and "covenant running with the land" interchangeably, though historically the former was a subset of the latter. RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 1.4 (2000), comment (a).

*Gas* supports Utah LLC's argument that the dedications set out in the agreements do not touch or concern the Assets and are therefore are not real property covenants.

### III. ARGUMENTS

**A. The Court Can, and Should, Consider Utah LLC's Motion for Judgment on the Pleadings Independently of Monarch's MSJ.**

8. Federal Rule of Civil Procedure 12(d) states that if "matters outside the pleadings are presented to and not excluded by the court" on a Rule 12(c) motion, "the motion must be treated as one for summary judgment under Rule 56."

9. The MSJ relies on the mistaken premise that Utah LLC's Motion for Judgment on the Pleadings [ECF No. 22] cannot be adjudicated without converting it into a motion for summary judgment. Specifically, in its response to Utah LLC's Motion for Judgment on the Pleadings, Monarch claims that Rule 12(d) applies because Utah LLC's motion "implicates evidence beyond the allegations in Monarch's Complaint, including evidence addressed to the parties' contractual intent and expectations." ECF No. 26 at 3. As a result, Monarch states that it "has filed a Motion for Summary Judgment contemporaneously with this Opposition [i.e., the MSJ], which demonstrates that the covenants in the GPA and SWDA touch and concern and otherwise run with the land at law and equity." ECF No. 22 at 3.

10. However, the standard under Rule 12(d) is not whether a Rule 12(c) motion "*implicates*" matters outside the pleadings; rather, it is whether such a motion *presents* matters outside the pleadings. Utah LLC's Motion for Judgment on the Pleadings does not present any matters outside the pleadings. With respect to real covenants, Utah LLC argues that the covenants in question do not run with the land because they do not satisfy the touch and concern requirement. That inquiry requires examining the language of the GPA and the SWDA. The Court need not consider other evidence on that issue.

4

11. If the MSJ is indeed simply a vehicle for presenting extraneous evidence on the Motion for Judgment on the Pleadings, the MSJ should be denied or abated. Indeed, Utah LLC's Motion for Judgment on the Pleadings assumes the truth of Monarch's allegations. If those allegations are insufficient to support its declaratory judgment claim, there is no need to consider Monarch's supporting evidence.

12. In any event, the MSJ does not present any evidence or cogent argument opposing Utah LLC's request for a judgment denying Monarch's claim for a declaration that Utah LLC must satisfy Monarch's pre-petition claim against Badlands. Accordingly, the Court should proceed to grant Utah LLC's Motion for Judgment on the Pleadings with respect to whether the sale of the Assets is free and clear of Monarch's pre-petition claim and the Contracts.

**B. The Affidavits Upon Which Monarch Relies Should Be Stricken.**

13. Federal Rule of Civil Procedure 26 states that a party must, without awaiting a discovery request, disclose the names of the witnesses that it may use to support its claims. FED. R. CIV. P. 26(a)(1)(A)(i). A party also has a duty to disclose any expert testimony and, in many cases, provide a report setting forth the expert's opinions. *Id.* 26(b).

14. Additionally, Rule 37 states that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.* 37(c)(1).

15. Monarch submitted the affidavits of Lesa S. Adair, a partner in an energy consulting firm, and Judson Williams, Monarch's Chief Financial Officer and Treasurer, in support of its MSJ. Monarch has not disclosed either witness to Utah LLC. Moreover, Monarch has not provided a report of Ms. Adair's expert opinion as set forth in Rule 26(b). Thus, Rule 37

mandates that the Court disregard and strike the affidavits in ruling on Monarch's MSJ.

16. Additionally, the Court should not consider the affidavits submitted by Monarch because they are irrelevant. The MSJ seeks a judgment stating that the "mineral reserve and salt water dedications in the GPA and SWDA meet all legal elements required for a covenant to run with the land as a matter of law and equity." MSJ at 34. Ms. Adair's affidavit sheds no light on that question. Although her affidavit does not summarize her opinions (as an expert report would), her opinions appear to be that (i) midstream providers are subject to market and operational risks; and (ii) dedication agreements are regularly used in the oil-and-gas industry to offset those risks. *See* Adair Aff. at 9.[3]

17. These opinions have no bearing on whether the specific dedications in the Contracts touch or concern the land. At most, they provide background information regarding the practices in the midstream sector.

18. Mr. Williams's affidavit is also irrelevant because it merely recites portions of the Contracts. The Contracts themselves are adequate evidence of their own contents. The only additional information that Mr. Williams arguably provides is the statement in ¶ 22 that "[a] central purpose of the . . . dedications in the GPA and SWDA, as understood by Gasco Production and Monarch at the time of contracting, was to safeguard revenue to Monarch and mitigate the risks of supply borne by Monarch . . . ."

19. However, Mr. Williams provides no facts showing how he has personal knowledge of a third-party's understanding of contractual terms as required under the Federal Rules. *See* FED. R. EVID. 602; FED. R. CIV. P. 56(c)(4). "Under the personal knowledge

---

[3] Adair's affidavit includes other irrelevant or obvious information, including explanation of the upstream and midstream sectors of the oil-and-gas industry, identification of Gasco and Monarch as upstream and midstream companies respectively, and descriptions of condensate and well water. *See generally* Adair Aff.

standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to." *Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1250 (10th Cir. 2013) (internal quotations omitted). Furthermore, to the extent Mr. Williams is recounting statements made by Gasco, those statements would be hearsay. FED. R. EVID. 801–802.

20. For these reasons, Mr. Williams's statement regarding Gasco's understanding is inadmissible and cannot be considered on summary judgment. *Navajo Nation Human Rights Comm'n v. San Juan Cty.*, 281 F. Supp. 3d 1136 (D. Utah 2017) (noting that "'the content or substance of the evidence [submitted on summary judgment] must be admissible.'") (quoting *Agro v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006)).

### C. In the Alternative, Monarch's Motion is Premature.

21. If the Court finds that considering evidence beyond the pleadings is necessary before deciding whether the covenants at issue satisfy the requirements for covenants running with the land, Utah LLC would submit that the MSJ is premature.

22. Federal Rule of Civil Procedure 56(d), made applicable to the instant matter by Bankruptcy Rule of Procedure 7056, states that "if a nonmovant shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

23. Summary judgment is appropriate only "after adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) ("The general principle of Rule 56(f) [now Rule 56(d)] is that summary judgment [should] be refused where the nonmoving party has not had the opportunity

to discover information that is essential to his opposition.") (internal quotations omitted).

24. The Court has not yet entered a scheduling order in this adversary proceeding. Neither party has conducted any discovery, and Utah LLC has not had a chance to cross-examine Ms. Adair or Mr. Williams, present a rebuttal expert, or request documents from Monarch. Due process dictates that Utah LLC not be deprived of such rights in this Adversary Proceeding.

25. In the event the Court considers Monarch's MSJ evidence, Utah LLC submits that additional evidence would be useful to the Court, and Utah LLC would request that the MSJ be denied or abated until discovery is complete.[4]

26. In support of this argument, Utah LLC submits as **Exhibit A** the affidavit of its counsel, Charles M. Rubio, explaining what additional discovery would be necessary in the event that the Court considers Monarch's MSJ evidence.

### D. The Alleged Real Covenants Do Not Touch or Concern the Land.[5]

27. Apart from these evidentiary and procedural concerns, Monarch is not entitled to summary judgment on its declaratory judgment claim because the Contracts do not create or contain any covenants that run with the land.

28. State law defines property interests, so this analysis is dependent on the state law governing the contracts. Here, Utah state law governs. For a real covenant to exist under Utah law, "(1) [t]he covenant must "touch and concern" the land; (2) the covenanting parties must intend the covenant to run with the land; and (3) there must be privity of estate." *Flying*

---

[4] Utah law permits a foreclosure sale free and clear of unrecorded interests. *Ketchum, Konkel, Barrett, Nickel & Austin v. Heritage Mountain Dev. Co.*, 784 P.2d 1217, 1225 (Utah Ct. App. 1989) (holding that Utah Code § 78B-6-903 "clearly provides that an unrecorded lien is cut off by a foreclosure action."). Under § 363(f)(1), the Assets can be sold free and clear of these unrecorded interests. On information and belief, Monarch did not record any interest in the relevant real property records, which would be confirmed by additional discovery.

[5] These arguments apply with equal force to Monarch's claim that the dedication in the GPA and the commitment in the SWDA are equitable servitudes.

*Diamond Oil Corp. v. Newton Sheep Co.*, 776 P.2d 618, 623 (Utah 1989).

29. Monarch's alleged covenants do not "touch or concern" the Assets. "What is essential" to real covenants and the touch and concern requirement in particular "is that the burdens and benefits created must relate to the land and the ownership of an interest in it; the burdens and benefits created are not the personal duties or rights of the parties to a covenant that exist independently from the ownership of an interest in the land." *Flying Diamond Oil Corp*, 776 P.2d at 623.

30. There are several reasons why the Contracts do not create real covenants. First, despite what Monarch contends, the language of the dedications in the Contracts does not create a real covenant. The GPA includes the following dedication:

> 3.4 <u>Dedicated Reserves</u>. . . . Producer (i) exclusively dedicates and commits to the performance of this Agreement the Dedicated Reserves, (ii) represents that the Dedicated Reserves are not otherwise subject to any other gas gathering agreement or commitment and (iii) agrees not to deliver any Gas produced from the Dedicated Reserves and owned by Producer to any other gas gatherer, processor, or gas gathering system. Producer possesses the right to deliver the Dedicated Reserves to the Gathering System.

The GPA defines "Dedicated Reserves" as "the interest of Producer in all Gas reserves in and under, and all Gas owned by Producer and produced or delivered from (i) the Leases" and various other lands in the AMI. Ex. 2-C at ¶ 1.1, p. 2.

31. While the GPA defines Dedicated Reserves broadly, the purpose of that definition is to require the producer to deliver *produced gas* to Monarch's gathering system. The only "performance" referenced in § 3.4 is delivery of gas, and that section is careful to ensure that the gas does not go into other gas gathering systems or processors. More broadly, the GPA is entirely focused on produced gas and associated services. *See, e.g.*, GPA, § 3.2 ("Gatherer shall provide gathering, compression and processing services . . ."); GPA, Art. 4 (describing the consideration for gas gathering and processing); GPA, § 5.1 ("Producer agrees to tender

[produced gas] to receipt points . . . .").

32. In *Sabine*, the court found that similar dedications contained in an agreement between a producer and midstream gatherer did not create any real property interest in the subject leases but was a mere contractual right. *In re Sabine Oil & Gas Corp.*, 567 B.R. 869, 875 (S.D.N.Y. 2017). The dedication in that case stated "Sabine 'dedicate[d] for gathering and dehydration' and agreed to deliver to Nordheim 'all [gas and condensate] produced and saved . . . from wells . . . located within the Dedicated Area.'" *Id.* at 872. The dedication in the GPA is similar in that it is merely a promise by the Producer to use Monarch's gathering and processing services. Such a promise is a contractual, not real, covenant.

33. Second, the GPA does not create real covenants because it governs produced gas, which is personal property under applicable law. Again, state law defines property interests, so analysis is dependent on the state law governing the contracts. In Utah, "*[u]ndetached* minerals are part of the earth and therefore realty." *Chase v. Morgan*, 339 P.2d 1019, 1021 (Utah 1959) (emphasis added). "Minerals" include gas but not extracted gas. *See Patterson v. Wilcox*, 358 P.2d 88, 90 (Utah 1961); *Stephen Hays Estate, Inc., v. Togliatti*, 38 P.2d 1066, 1068 (Utah 1934). Thus, extracted gas is not real property.

34. In further support of its holding, the Court in *Sabine* explained that the agreements did not contain covenants because they "concern[ed] only the Products produced from real property and affect only [the debtor]'s personal property rights." *In re Sabine Oil & Gas Corp.*, 567 B.R. at 875. The Court further noted that "Sabine was free to produce as much or as little gas and condensate from the Dedicated Areas as it chose. While failing to deliver the minimum volume set out in the Agreements would require Sabine to make a deficiency payment, that obligation is merely contractual." *Id.* The same circumstances are present here. The GPA

dedication governs the gathering of *extracted* gas, which is personal property. Despite that dedication, Badlands could fail to deliver gas and simply make a deficiency payment to Monarch. The dedication is therefore a contractual, not a real, covenant.

35. These arguments apply with equal force to the SWDA. Instead of a dedication, the SWDA contains merely a "commitment" of water:

> Gasco hereby commits all Water requiring disposal from its operations in the Wilkin Ridge and Riverbend Productions Areas, beginning with the effective date, to the performance of this Agreement . . . .

Ex. 2-F, § 2.1(a). Such a commitment is merely a contractual promise by the Producer to provide water to Monarch.

36. Furthermore, the SWDA does not govern minerals because water is not a mineral under Utah law. *See Stephen Hays Estate, Inc., v. Togliatti*, 38 P.2d 1066, 1068 (Utah 1934). Thus, based on *Sabine*, the SWDA governs only personal property and does not create a real covenant.

37. The reliance by Monarch on cases it states are persuasive in their favor do not support what Monarch contends. Monarch cites *American Refining Co. v. Tidal Western Oil Corp.*, 264 S.W. 335, 338 Tex. Civ. App.—Amarillo 1924), for the proposition that covenants to supply gas touch or concern the land. However, that case is distinguishable "because at the time the contract was made it had for its object gas which was then inherent in and a part of the land itself." *Id.*; *see also In re Sabine Oil & Gas Corp.*, 567 B.R. at 875. Here, the GPA has as its object the gathering and processing of *produced* gas.

38. *Local Federal Savings & Loan Association of Oklahoma City v. Eckroat* is also distinguishable. 100 P.2d 261 (Okla. 1940). There, the covenants at issue were royalties, which are a recognized real property right in Oklahoma. Instead of royalties, the Contracts here contain

only dedications and commitments, which are insufficient to create real covenants. *See Sabine*, 567 B.R. at 875.

39. Monarch's attempts to distinguish *Sabine* are unavailing. Monarch makes much of the fact that the GPA dedicates "Dedicated Reserves" to the performance of that GPA, while the agreement in Sabine dedicated only gas "produced and saved." However, as the District Court decision explains, a "dedication," regardless of its target, amounts to merely an agreement "to provide services to the minerals' owner." *In re Sabine Oil & Gas Corp.*, 567 B.R. at 875. The purported covenants in this case suffer the same fault. This problem is arguably more acute with respect to the SWDA, since that agreement merely "commits" water instead of dedicating it.

40. Monarch's focus on the "various other reciprocal and mutually dependent covenants contained in the GPA or SWDA" is irrelevant. The only alleged covenants that Monarch has put at issue in this Adversary Proceeding are the dedication in the GPA and the commitment in the SWDA. A contractual promise does not become a real covenant simply because the contract may create other covenants.

41. Finally, while *Sabine* is not controlling authority, neither is much of the case authority cited in Monarch's MSJ. Utah LLC submits that *Sabine* is highly persuasive because it is a recent bankruptcy case dealing with the same covenant issue that Monarch has raised here. Also, mentioning that it is on appeal tells only half the story: it was first appealed to the United District Court for the Southern District of New York, where it was affirmed.

### E. Factual Disputes Preclude a Finding that the Parties Intended for the Alleged Real Covenants to Run with the Land.

42. Under Utah law, "the covenanting parties must intend the covenant to run with the land" in order for the covenant to, in fact, run with the land. *Flying Diamond Oil Corp.*, 776 P.2d at 623.

43. It is without dispute that Monarch never recorded in any property records in either Utah or Colorado the memorandum attached to the GPA or the SWDA. Utah LLC submits that such failure to record is controverting evidence that the Contracts were not intended to run with the land. *See Flying Diamond Oil Corp.*, 776 P.2d at 629 ("[A] properly executed and recorded writing also serves the critical and important function of imparting notice to subsequent purchasers."). Additional discovery is necessary to ascertain which agreements Monarch and/or Gasco recorded.

### F. Monarch's Contracts Can Be Satisfied by Money and Therefore Constitute Interests that Can Be Sold Free and Clear Under § 363(f)(5).

44. Section 363 of the Bankruptcy allows a Debtor to sell property free and clear of any interests therein if one or more requirements are met. 11 U.S.C. § 363(f)(1)-(5). Section 363 would apply even if Monarch establishes that the dedication and commitment are covenants running with the land. *Newco Energy v. Energytec, Inc. et al. (In re Energytec, Inc.)*, 739 F.3d 215 (5th Cir. 2013).

45. Utah LLC's purchase was free and clear under § 363(f)(5). Section 363(f)(5) provides that assets can be sold free and clear of interests if such interests can be satisfied with money. Monarch's "interests" are simply contractual obligations that Badlands incurred to make certain payments. Under the GPA, Badlands could fail to deliver gas and simply make deficiency payments. Under the SWDA, Badlands has the right, but not the obligation, to get saltwater disposal services from Monarch. If Badlands did not provide saltwater, then it would not have any amount to pay.

46. In a suit at common law, Monarch's interests could be satisfied by a money judgment for damages. *Cent. Utah Water Conservancy Dist. v. Upper E. Union Irrigation Co.*, 321 P.3d 1113, 1123 n.3 (Utah 2013). Future damages could be estimated using discounted

13

future cash flows. Monarch admits that these alleged covenants can be satisfied with money by bringing a breach of contract claim in the adversary seeking payment of $1.2 million owed by Badlands. Compl. at ¶ 44.

47. For these reasons, the Court cannot grant Monarch's request for a declaration that Utah LLC did not purchase the Assets free and clear of Monarch's interests.

## V. CONCLUSION

For the reasons stated above, Utah LLC, the buyer, respectfully requests that the Court render a judgment (i) denying Monarch's requested relief; and (ii) providing for such other relief as may be just and proper.

Dated: March 8, 2018.

                              DIAMOND MCCARTHY LLP

                              */s/ Kyung S. Lee*
                              Kyung S. Lee
                              klee@diamondmccarthy.com
                              Charles M. Rubio
                              crubio@diamondmccarthy.com
                              909 Fannin, Suite 3700
                              Houston, TX 77010
                              Telephone: 713-333-5100
                              Facsimile: 713-333-5199

                              *Attorneys for Wapiti Utah L.L.C.*
                              *f/k/a Wapiti Newco, LLC*