# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | Case No. 17-17465-KHT |
| BADLANDS ENERGY, INC., et al., | Chapter 11 |
| Debtor. | Jointly Administered Under **Case No. 17-17465-KHT** |
| MONARCH NATURAL GAS, LLC, n/k/a MONARCH MIDSTREAM, LLC, | |
| Plaintiff | |
| v. | Adversary No. 17-01429 KHT |
| BADLANDS PRODUCTION COMPANY, f/k/a GASCO PRODUCTION COMPANY, BADLANDS ENERGY INC., f/k/a GASCO ENERGY, INC., and WAPITI UTAH, LLC f/k/a WAPITI NEWCO, LLC, | |
| Defendants | |

## MONARCH NATURAL GAS, LLC'S REPLY IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff Monarch Natural Gas, LLC ("Monarch"), through undersigned counsel, submits the following reply memorandum in support of its Motion for Summary Judgment [Docket No. 27 and 29] and in response to the Opposition to Motion for Summary Judgment and Objection to Materials in Support Thereof filed by Wapiti Utah, L.L.C. ("Wapiti Utah") [Docket No. 32].

## INTRODUCTION

Wapiti Utah's opposition poses various procedural and evidentiary challenges that are designed to distract from the merits or otherwise delay the disposition of Monarch's Motion for Summary Judgment. All of these challenges fail as a matter of law. In terms of substance, Wapiti Utah advances no new arguments or authority addressed to the core issue in this proceeding:

whether the covenants in the Gas Gathering and Processing Agreement ("GPA") and Agreement for Disposal of Salt Water ("SWDA") run with the land. Wapiti Utah simply cannot dispute – and in many instances does not even address – the material facts establishing that both contracts touch and concern the land, and the parties' in all events intended the contracts to run with the land.

This Court has definitely held that property, such as the assets of the debtor, Badlands Production Company ("Badlands"), cannot be sold free and clear of covenants running with the land, such the GPA and SWDA, under 11 U.S.C. §363(f). Wapiti Utah's opposition creates no genuine issues of material fact to preclude summary judgment on this basis. Accordingly, Monarch requests that the Court grant its Motion for Summary Judgment.

## LEGAL DISCUSSION

### I. Wapiti Utah's Motion for Judgment on the Pleadings Should be Converted to a Motion for Summary Judgment.

Rule 12(d) of the Federal Rules of Civil Procedure mandates that Wapiti Utah's Motion for Judgment on the Pleadings be converted to a motion for summary judgment. Conversion is not only required as a matter of law, but it would serve judicial economy insofar as the Court could consider both motions filed by Wapiti Utah and Monarch in conjunction.

A motion for judgment on the pleadings under Rule 12(c) "should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."[1] When evidence outside the complaint is presented in connection with a Rule 12(c) motion, a court is afforded two options by Rule 12(d): "the court may either: (1) exclude the extrinsic documents from review; or (2) convert the motion

---

[1] *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa.*, 442 F.3d 1239, 1244 (10th Cir. 2006) (emphasis added).

2

to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Fed. R. Civ. P. 56."[2] Conversion is highly favored because:

> Rule 1 favors this option because it serves justice. The policies underlying Rule 12(d) favor this option because it facilitates the proper disposition of the action. The federal court's underlying policy of deciding actions on the merits also favors this option.[3]

Resolving whether the GPA and SWDA run with the land cannot be determined by merely "examining the language of the [contracts]," as Wapiti Utah contends.[4] Accordingly, Monarch presented the declarations of Judson Williams and Lesa Adair in opposition to Wapiti Utah's Rule 12(c) Motion as further evidence that the dedications run with the land. Wapiti Utah only disputes the "touch and concern" and intent elements required for a covenant to run with the land. The declarations address both legal elements and serve other important evidentiary purposes.

Mr. Williams' declaration authenticates the GPA, SWDA and the Asset Purchase Agreement and explains the purpose and intent of the covenants, especially in context of Monarch's acquisition of the gas gathering and saltwater water disposal facilities previously owned by the debtor, Badlands.[5] Monarch was required to authenticate the contracts to constitute competent evidence under Rule 901 of the Federal Rules of Evidence. And, under Utah law, the

---

[2] *Pearson Capital Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392 (S.D. NY Aug. 28, 2015) (*citing Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2nd Cir. 2002).

[3] *Lee Poh Sun v. Dreamdealers USA, LLC*, No. 2:13-cv-1605, 2014 U.S. Dist. LEXIS 57936, at *8-9 (D. Nev. March 20, 2014) (citing 5C C. Wright & A. Miller, Fed. Prac. & Proc.: Civil 3d § 1366 at 165 (3d ed. 2004) and *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985).

[4] Opposition to Motion for Summary Judgment, p. 4 [Docket No. 32].

[5] Dec. of J. Williams, at ¶¶8-22 (Exhibit 2 to Motion for Summary Judgment).

"purpose" and "intent" of a contract is essential in determining whether a covenant touches and concerns and ultimately runs with the land.[6]

Monarch also offered the declaration of Lesa Adair to inform the Court of the historic industry practice and purpose of using the dedications at issue, which provides evidence of the relation of the covenants to the land and the parties' intent that the covenants run with the land. Equally important, Ms. Adair attested to the industry meaning of the term "reserves" as used in the GPA – the real property interest dedicated in the contract.[7]

The declarations are competent evidence, relevant and *required* for a complete and proper disposition of this case. Therefore, Wapiti Utah's Motion for Judgment on the Pleadings should be converted to a motion for summary judgment to accommodate this crucial evidence.

**II.     The Declarations of Judson Williams and Lesa Adair are Timely, Admissible Evidence and Should Not Be Stricken.**

    **A.     The Declarations Are Timely.**

Wapiti Utah's assertion that the declarations of Mr. Williams and Ms. Adair should be stricken due to Monarch's purported failure to disclose the witnesses is surprising and baseless. All parties to this proceeding agreed to an indefinite extension of Rule 7026 disclosures (which adopts Rule 26(a)(1) disclosures) pending the approval of the Settlement Agreement between Monarch and Badlands – and this Court ordered the indefinite extension on December 26, 2017.[8]

---

[6] *See Flying Diamond Oil Corp. v. Newton Sheep Co.*, 776 P.2d 618, 635-626 (Utah 1989); *Reishus v. Bullmasters, LLC*, 2016 COA 82, 2016 Colo. App. LEXIS 697, *45 (Colo. App. 2016); *see also* Motion for Summary Judgment at pp. 21-23 [Docket No. 27].

[7] Dec. of L. Adair, at ¶13 (Exhibit 1 to Motion for Summary Judgment).

[8] Approval of the Settlement Agreement between Monarch and Badlands is still pending, and Monarch has submitted status reports as required by the Court's December 26, 2017 Order [Docket Nos. 19, 21, and 30].

Wapiti Utah not only agreed to this extension of disclosures,[9] but it has since acted in compliance with the Court's order. Neither Monarch **nor Wapiti Utah itself** have exchanged initial disclosures under Rule 7026 or Rule 26(a)(1). And, the Court has not even entered a scheduling order yet, much less set deadlines for the exchange of expert disclosures or reports.

Monarch was not obligated to disclose Mr. Williams and Ms. Adair as part of initial disclosures or otherwise as the parties agreed to indefinitely extend Rule 7026 deadlines. Thus, the declarations are timely and proper evidence in response to Wapiti Utah's Rule 12(c) Motion.

### B. The Declarations Are Relevant and Otherwise Competent Evidence.

Wapiti Utah's argument that the declarations are irrelevant or somehow inadmissible is also misguided. A court may consider "the custom of the oil and gas industry to determine the true [contractual] intent of the parties, as well as extrinsic evidence, including expert testimony, to determine such industry customs."[10] Ms. Adair's declaration serves this very purpose.

Mr. Williams' declaration authenticates the contracts at issue and provides evidence of the underlying purpose of the covenants and the parties' contractual intent, which again address essential legal requirements under state law.[11] Indeed, in his capacity as the Chief Financial Officer, Mr. Williams executed both the GPA and SWDA on behalf of Monarch.[12] Therefore,

---

[9] Unopposed Motion to Amend Order for Compliance with Rule 7026 [Docket No. 18].

[10] *Dickson v. Sklarco L.L.C.*, No. 5:11-cv-0352, 2014 U.S. Dist. LEXIS 126189, *11-12 (W.D. La. Sept. 9, 2014); *see also Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 281 (5th Cir. 1987) (finding it "prudent" to admit expert testimony for the purpose of receiving an explanation of the technical and customary meaning of terms used in particular provisions).

[11] Dec. of J. Williams, at ¶¶8-22 (Exhibit 2 to Motion for Summary Judgment).

[12] Exhibits 2-C – 2-F to the Dec. of J. Williams (Exhibit 2 to Motion for Summary Judgment).

5

Wapiti Utah's contention that Mr. Williams lacks personal knowledge of the parties' contractual intent or the underlying purpose of the contracts he actually executed has no merit.[13]

### III. Monarch's Motion for Summary Judgment is Not Premature.

The contention that Wapiti Utah's Motion for Judgment on the Pleadings is ripe for the Court's consideration but Monarch's Motion for Summary Judgment is somehow not advances a blatant contradiction. Nevertheless, Monarch recognizes that Rule 12(d) affords Wapiti Utah, as the non-movant, the opportunity to respond to the declarations presented in Monarch's Motion for Summary Judgment. Any discovery pursued by Wapiti Utah, however, must be "<u>reasonable</u>" and specifically limited to "<u>material that is pertinent to the [Motion for Summary Judgment]</u>."[14] The appropriate procedure is for the Court to set a short briefing schedule allowing "<u>limited</u>" discovery addressed to the specific facts raised in the declarations.[15]

Wapiti Utah should need very limited discovery because it adamantly contends the declarations are irrelevant. In its opposition, the majority of discovery Wapiti Utah seeks relates

---

[13] *Rosemann v. Roto-Die, Inc.*, 377 F.3d 897, 903 (8th Cir. 2004) (president could testify about the company's understanding of contractual term, noting: "[e]quivocal terms in a contract may be interpreted in light of all the surrounding circumstances, including . . . the contracting parties' own interpretation of the contract); *Kirby v. White*, No. 15-CV-034, 2016 U.S. Dist. LEXIS 180255, *10-11 (D. Okl. Dec. 30, 2016) (rejecting objections to affidavit because the affiant had personal knowledge to authenticate and testify about exhibits based on personal knowledge).

[14] Fed. R. Civ Proc. 12(d) (emphasis added).

[15] *See Bisor v. Solis*, No. 3:10-CV-1115-L, 2010 U.S. Dist. LEXIS 94944, *4-5 (Sept. 10, 2010) (converting to motion for summary judgment and imposing a 14-day deadline and briefing schedule to present evidence under Rule 12(d)); *Stevens v. City of New York*, No. 12-civ-1918, 2012 U.S. Dist. LEXIS 150227, *17-18 (S.D. NY Oct. 11, 2012) (imposing, pursuant to Rule 12(d), a briefing schedule and short period of discovery "limited to the issue of administrative exhaustion"); *Feamster v. CompuCom Sys.*, No. 15-00564, 2016 U.S. Dist. LEXIS 20150, *9 (W.D. VA Feb. 19, 2016) (same); *Alvarez v. CSX Corp.*, No. 10-CV-80-PRC, 2013 U.S. Dist. LEXIS 63495, *13 (N.D. Ind. May 2, 2013) (same).

to ascertaining whether Monarch and Badlands' predecessor, Gasco Production Company ("Gasco Production"), intended the covenants in the GPA and SWDA to run with the land.[16] Both contracts expressly provide that the dedications "run with the land;" consequently, Wapiti Utah has no basis to dispute the intent of the parties.[17] In this regard, "[a]n express statement in the document creating the covenant running with the land is usually <u>dispositive</u> of the intent issue."[18] Wapiti Utah is not entitled to broad discovery to ascertain the intent of the parties which is clearly expressed in the contracts.

Moreover, Wapiti Utah's ongoing assertion that mortgage foreclosure laws – particularly, Utah Code § 78B-6-903 – somehow provide authority for a free and clear sale under §363(f) is tenuous. This case, of course, does not involve a mortgage foreclosure or related lien; it involves real covenants running with the land, which this Court has held are "property rights" not subject to §363(f).[19] Here, too, Wapiti Utah is not entitled to broad discovery to determine the application of a theory this Court has unequivocally rejected.

---

[16] *See* Exhibit A to <u>Opposition to Motion for Summary Judgment</u> [Docket No. 32-1].

[17] <u>Amended and Restated Agreement</u>, at ¶3.4, p. 8 (Exhibit 2-C to Motion for Summary Judgment); <u>SWDA</u>, at ¶2.1(a), p. 2 (Exhibit 2-F to Motion for Summary Judgment).

[18] *Flying Diamond Oil Corp*., 776 P.2d at 627 (emphasis added); *Reishus v. Bullmasters, LLC*, 2016 COA 82 (Colo. App. 2016) (based on explicit language in agreement, "the parties clearly intended the 2007 Amended Agreement to run with the land"); *Cloud v. Association of Owners, Satellite Apartment Bldg., Inc*., 857 P.2d 435, 442 ( Colo. App. 1992) (same).

[19] *In re Lonesome Pine Holdings, LLC*, No. 10-34560 HRT, 2011 Bankr. LEXIS 5775, *9 (Bankr. D. Colo. Sept. 1, 2011) (restrictive covenants "are not 'interests' that fall within § 363").

### IV. The GPA and SWDA Constitute Covenants Running With the Land.

#### A. The Covenants "Touch and Concern" the Land.

Wapiti Utah's opposition, as it relates to the touch and concern element, rehashes the same arguments advanced in its Motion for Judgment on the Pleadings. It cites no new legal authority, disregards controlling authority, and overlooks the same legal and factual distinctions between this case and the primary case on which it relies, *In re Sabine Oil & Gas Corp.*[20]

Wapiti Utah is correct that state law defines property interests in determining whether a covenant runs with the land. In Utah, it is undisputed that "real property" is defined as "any right, title, estate, or interest in land, including all nonextracted minerals located in, on, or under the land…."[21] In the GPA, the Producers committed the "Dedicated Reserves" to the performance of the contract, which *inter alia* is defined as their interests in:

1. "all Gas reserves in and under... (x) the Leases[22] or (y) lands within the AMI;[23]" and

2. "all additional right, title, interest, or claim of every kind and character of [Producers] or [their] Affiliates in (x) the Leases or (y) lands within the AMI."[24]

---

[20] 567 B.R. 869 (S.D. N.Y. 2017).

[21] Utah Code § 57-1-1(3); *State of Utah v. Babbitt*, 830 F. Supp. 586, 594, fn. 14 (D. Utah 1993) (oil and gas lease conveys a "real property interest."); *Hagood v. Heckers*, 513 P.2d 208 (Colo. 1973) (same).

[22] The Leases are comprised of over 400 oil and gas leases listed in Schedule 3 to the Amended and Restated Agreement (Exhibit 2-C to Motion for Summary Judgment).

[23] "AMI," or Area of Mutual Interest, is the geographical location, comprised of over 100,000 acres, reflected in Schedule 1 to the Amended and Restated Agreement (Exhibit 2-C to Motion for Summary Judgment).

[24] Amended and Restated Agreement, at ¶1.1, p. 2 (Exhibit 2-C to Motion for Summary Judgment).

Producers' interests in the "Gas reserves," "Leases" and "lands within the AMI" without question constitute "real property" as a matter of state law. Further, the dedications imposed by the GPA without question affect the "use, value or enjoyment" of these real property interests. **Significantly**, **this is "*all*" that is required under Utah law for a covenant to touch and concern the land**.[25] Wapiti Utah simply cannot contest these points.

        (i)    *In re Sabine Oil & Gas Corp*. is Distinguishable on the Facts and Law.

Wapiti Utah relies almost entirely on *In re Sabine Oil & Gas Corp*., a New York decision applying Texas law based on entirely different contractual language, in attempting to characterize the Dedicated Reserves as "personal property."[26] In *Sabine*, as Wapiti Utah notes, the dedications affected "gas and condensate produced and saved… from wells," and the court therefore held that the covenants "concerned only the Products produced from real property and affect only Sabine's personal property rights."[27] Here, in contrast, the Dedicated Reserves in the GPA affect the Producers' "Gas reserves," Leases, and all other interests in the "lands within the AMI."[28] As is clear on the face of the GPA, the dedication does not "govern produced gas," as Wapiti Utah asserts;[29] it governs "interests in non-extracted minerals" which are in all events "real property"

---

[25] *Flying Diamond Oil Corp.*, 776 P.2d at 623-624 ("**all** that must be shown for a covenant to run with the land is that it 'be of such character that its performance or nonperformance will so affect the use, value or enjoyment of the land itself….'" (emphasis added).

[26] 567 B.R. 869 (S.D. N.Y 2017).

[27] *Id*. at 872 and 876; *see also* Opposition to Motion for Summary Judgment, ¶¶32 and 34, p. 10 [Docket No. 32].

[28] Amended and Restated Agreement, at ¶1.1, p. 2 (Exhibit 2-C to Motion for Summary Judgment).

[29] Opposition to Motion for Summary Judgment, ¶33, p. 10 [Docket No. 32].

9

under Utah law.[30] Wapiti Utah's attempts to characterize the object of the GPA as "produced gas," "extracted gas," "undetached minerals" and/or "personal property" flatly contradict the plain language of the GPA as interpreted under Utah law.

Wapiti Utah also draws on *Sabine* in arguing that the legal effect of the terms "dedication" and "commitment" is insufficient to create a covenant running with the land. The term "dedication" in the GPA, Wapiti Utah maintains, "amounts to merely an agreement 'to provide services to the minerals' owner.'"[31] Wapiti Utah claims the term "commitment" in the SWDA has less significance.[32] This position, like Wapiti Utah's other arguments, contradicts Utah law. A covenant running with the land does not require a conveyance of a real property interest;[33] rather, it is merely a "formal agreement or promise . . . to do or not do a particular act."[34] The dedications and commitments in the GPA and SWDA create such an "agreement or promise" and have more than sufficient legal effect to create covenants running with the land.

Lastly, Wapiti Utah highlights that, under the GPA, the Producers are "free to produce as much or as little gas as they chose," which in turn suggests the dedication is "merely contractual."[35] Here, again, this point has no bearing under Utah law. In *Flying Diamond*, the royalty payment obligation hinged on the same contingent circumstances and depended on *when and if* minerals

---

[30] Utah Code § 57-1-1(3).

[31] Opposition to Motion for Summary Judgment, ¶39, p. 12 [Docket No. 32].

[32] *Id.*

[33] *In re Sabine Oil & Gas Corp.*, 567 B.R. at 876.

[34] *Keith v. Mt. Restors Dev., L.L.C.*, 2014 UT 32, ¶36 (Utah 2014); Powell on Real Property, § 60.01.

[35] Opposition to Motion for Summary Judgment, ¶34, p. 10 [Docket No. 32].

10

were produced on the land. The contract in that case burdened the mineral owner in "carrying on oil and gas exploration" as follows:

> So long as it is receiving oil and/or gas production from or oil and/or gas royalties upon production from the described premises…, [mineral owner will] pay or cause to be paid to the Land Owner in cash the value … of two and one-half percent (2 1/2%) of all the oil and gas…hereafter produced….[36]

Thus, the mineral owner in *Flying Diamond* could produce "as much or as little oil or gas as it chose," but would be obligated to pay the landowner royalties in the event it did produce oil and gas or receive royalties – and, yet, the Utah Supreme Court held that this obligation was a covenant running with the land. These very same circumstances apply here. So long as the Producers are producing gas from their reserves, leases and/or lands within the AMI, they are obligated to deliver any gas and produced water to Monarch under the GPA and SWDA.[37]

(ii) *The Authority Cited by Monarch is On Point and Controlling.*

Equally ineffective is Wapiti Utah's attempt to distinguish the authorities cited by Monarch. *American Refining Co. v. Tidal Western Oil Corp.*[38] directly undercuts Wapiti Utah's theory that the dedications in the GPA and SWDA concern personal property. In that case, the object of the gas sales contract was to "<u>supply</u> and <u>deliver</u> unto [purchaser]…all of the <u>casinghead gas</u> and <u>gas</u> coming from the oil wells…which may be <u>produced</u> from oil wells now or hereafter…."[39] In fact, unlike this case, the gas sales contract in *American Refining* did not even

---

[36] *Flying Diamond*, 776 P.2d at 621.

[37] Indeed, the same circumstances existed in *American Refining Co., infra* (gas sales contract) and *Eckroat, infra* (royalty payment obligation).

[38] 264 S.W. 335, 338 (Tex. Civ. App. 1924).

[39] *American Refining Co.*, 264 S.W. at 336 (emphasis added).

11

dedicate or commit the producers' mineral reserves or other real property interests in the produced lands; nevertheless, the court concluded that the covenant to supply gas ran with the land "**because at the time the contract was made it had for its object gas which was then inherent in and part of the land itself**."[40]

*Local Federal Savings & Loan Association of Oklahoma City v. Eckroat*[41] held that an obligation to pay royalties runs with the land because it "dealt primarily with oil in place." This payment obligation, notably, was not triggered until oil or gas was produced from the land. In its opposition, Wapiti Utah attempts to distinguish *Eckroat* because the covenant involved the payment of royalties, which is a real property right in Oklahoma.[42] Yet, the same is true regarding the "Dedicated Reserves" – mineral reserves, leases and similar interests in land are "real property" under Utah law. Wapiti Utah's arguments in this regard are illogical and contradictory.

Wapiti Utah also overlooks – in fact, completely fails to address – the overwhelming majority of case law holding that agreements to furnish gas and water commonly constitute covenants running with the land.[43] The objects of the covenants in these cases, unlike this case, actually involved gas and water extracted from the ground, but the courts held that the covenants ran with the land nonetheless.

---

[40] *American Refining Co*., 264 S.W. at 336. *See also Prochemco, Inc. v. Clajon Gas Co*., 555 S.W.2d 189, 191 (Tex. App.— El Paso 1977) ("One of the types of contracts that may run with the land is one to furnish gas").

[41] 100 P.2d 261 (Okla. 1940).

[42] Opposition to Motion for Summary Judgment, ¶38, pp. 11-12 [Docket No. 32].

[43] *See* Footnote 68 in Monarch's Motion for Summary Judgment [Docket No. 27]

Lastly, in Utah (and Colorado), real covenants should be construed in conjunction with all mutual and interdependent contractual provisions when determining if they touch and concern the land.[44] The dedications in the GPA and SWDA, therefore, should not be viewed in isolation but in light of all reciprocal and mutually dependent obligations "tied" to the Producers' mineral interests. This includes the underlying consideration for which the dedications were granted in the first instance – Monarch's acquisition of the gathering and salt water facilities and related real property.[45] This also includes the drilling commitments, the easement, and purchase option imposed under the GPA (all direct ties to the land).[46] Thus, when viewed as a whole with all reciprocal and interdependent contractual obligations, the dedications in the GPA and SWDA clearly affect the use, value and enjoyment of the Producers' mineral interests.[47]

Wapiti Utah's opposition merely glosses over these fundamental principles of Utah law and cites to absolutely no countervailing authority. Instead, it makes the blanket statement that "[a] contractual promise does not become a real covenant simply because the contract may create

---

[44] *Flying Diamond Oil Corp.*, 776 P.2d at 625-627; *Reishus*, 2016 COA 82, at ¶44; *See also* discussion at pages 21-26 of Monarch's Motion for Summary Judgment [Docket No. 27].

[45] Dec. of J. Williams, at ¶¶8-12 and 16 (Exhibit 2 to Motion for Summary Judgment).

[46] Amended and Restated Agreement, at ¶3.3(b), p. 8 (Exhibit 2-C to Motion for Summary Judgment); *see also* Exhibit A to Amended and Restated Agreement, at ¶4 and Schedule 4 to Amended and Restated Agreement.

[47] *Flying Diamond Oil Corp.*, 776 P.2d at 626-627.

other covenants."[48] This statement does not represent the law in Utah (or Colorado), particularly if the covenants as a whole are "tied" to the land as they are here.[49]

> **B. No Genuine Issue of Material Fact Precludes a Finding that the Parties Intended the Covenants in the GPA and SWDA to Run With the Land.**

Both the GPA and the SWDA provide that the commitments and dedications contained in the contracts constitute "covenant[s] running with the land."[50] This express language in the contracts is "dispositive" of the issue of intent.[51] Nevertheless, as discussed in Monarch's Motion for Summary Judgment, the circumstances surrounding the execution of the GPA and SWDA, including Monarch's significant investment in purchasing the Producers' gathering and salt water disposal systems,[52] as well as the historic use of such dedications to protect these investments,[53] eliminates any doubt as to the parties' intent that the covenants run with the land.

Wapiti Utah cannot – and does not – dispute the express terms of the GPA or SWDA. Instead, it attempts to craft an argument that a failure to record a contract is somehow "controverting evidence that the contracts were not intended to run with the land."[54] Wapiti Utah

---

[48] Opposition to Motion for Summary Judgment, ¶40, p. 12 [Docket No. 32].

[49] *Flying Diamond Oil Corp.*, 776 P.2d at 625-627; *Reishus*, 2016 COA 82, at ¶44 ("the 2007 Amended Agreement touches and concerns the land when read as a whole…[the] provisions are closely tied with the use, possession, and enjoyment of the [land]").

[50] *See* Amended and Restated Agreement, at ¶3.4, p. 8 (Exhibit 2-C to Motion for Summary Judgment) [Docket No. 29-3]; SWDA, at ¶2.1(a), p. 2 (Exhibit 2-F to Motion for Summary Judgment) [Docket No. 29-6].

[51] *Flying Diamond Oil Corp.*, 776 P.2d at 627 (emphasis added); *Swenson v. Erickson*, 2000 UT 16, P11, 998 P.2d 807, 811 (Utah 2000) ("unambiguous restrictive covenants should be enforced as written.").

[52] Dec. of J. Williams, at ¶¶20-22 (Exhibit 2 to Motion for Summary Judgment).

[53] Dec. of L. Adair, at ¶19, 21-22 (Exhibit 1 to Motion for Summary Judgment).

[54] Opposition to Motion for Summary Judgment, ¶43, p. 13 [Docket No. 32].

parses a portion of *Flying Diamond* that: "a properly executed and recorded writing also serves the critical and important function of imparting notice to subsequent purchasers."[55] Yet, this statement was made in passing in discussing the <u>statute of frauds</u>, specifically, the value of imparting <u>constructive</u> notice to subsequent purchasers (indeed, another means of acquiring notice is by "<u>actual knowledge</u>," like Wapiti Utah had in this instance).[56] *Flying Diamond*'s discussion of recording was not even made in the section of the decision in which the intent of the parties was discussed.[57] Again, in the <u>relevant</u> portion of *Flying Diamond*, the court holds that the parties' express contractual language is generally "dispositive" of the issue of intent.

No authority exists to support Wapiti Utah's theory that a failure to record is even relevant – much less controverting evidence – as to whether contracting parties intended a covenant to run with the land. The GPA and SWDA expressly provide that the covenants shall run with the land, which is dispositive of the issue of intent. No amount of discovery can change this material fact.

**V.     Contracts With Covenants Running with the Land, Including Pre-Petition Defaults and Obligations, Cannot Be Assumed Free and Clear Under Section §363(f).**

Wapiti Utah continues to argue that a covenant running with the land is subject to a free and clear sale under Section §363(f). This Court has squarely rejected this argument, and Wapiti Utah simply refuses to recognize the rulings.

In *In re Lonesome Pine Holdings, LLC*, this Court concluded that a debtor may **not** sell property free and clear of covenants running with the land because such covenants "are not

---

[55] *Flying Diamond Oil Corp.*, 776 P.2d at 629.

[56] *See Utah Farm Prod. Credit Ass'n v. Wasatch Bank of Pleasant Grove,* 734 P.2d 904, 906 (Utah 1986) ("recording or **actual notice** is necessary to impart notice to third parties").

[57] *Flying Diamond Oil Corp.*, 776 P.2d at 627-628.

15

'interests' that fall within §363."[58] The Court reasoned that covenants running with the land "**create equitable interests that do not compel a person to accept a monetary interest; thus, when restrictive covenants are involved, there is nothing that can force those who benefit from restrictive covenants to 'forego equitable relief in favor of a cash award**.'"[59] This Court issued the same ruling in *In re Banning Lewis Ranch Co., LLC*.[60] These rulings are consistent with the overwhelming majority of decisions in other jurisdictions.[61]

Utah law is clear that covenants running with the land, such as those in the GPA and SWDA, "bind successive owners of the burdened or benefited land."[62] As this Court has made equally clear, these covenants "create equitable interests that do not compel a person to accept a monetary interest" under §363(f).[63] Both state and bankruptcy law, therefore, mandate that Badlands cannot sell its assets to Wapiti Utah free and clear of the GPA and SWDA, <u>including all pre-petition defaults and obligations under the contracts.</u> Wapiti Utah's arguments to the contrary have absolutely no legal support.[64]

---

[58] No. 10-34560 HRT, 2011 Bankr. LEXIS 5775, *9 (Bankr. D. Colo. Sept. 1, 2011).

[59] *In re Lonesome Pine Holdings, LLC*, 2011 Bankr. LEXIS 5775, at *9-10.

[60] 532 B.R. 335, 345-46 (Bankr. D. Colo. 2015).

[61] *See* Footnote 50 of Motion for Summary Judgment [Docket No. 27].

[62] *Stern v. Metro. Water Dist.*, 2012 UT 16, ¶ 21, 40, 274 P.3d 935, 941, 945 (Utah 2012).

[63] *In re Lonesome Pine Holdings, LLC*, 2011 Bankr. LEXIS 5775, at *9-10

[64] The only authority Wapiti Utah cites in attempting to apply §363 is *In re Energytec, Inc.*, 739 F.3d 215 (5th Cir. 2013). In that case, the court merely remanded the case to the district court to determine whether the debtor could sell a pipeline free and clear of real covenants under §363. The court did not even address whether such relief could in fact be awarded.

## VI. Conclusion

The GPA and SWDA meet all legal requirements for a covenant to run with the land as a matter of law and equity. Accordingly, Badlands' assets cannot be sold to Wapiti Utah "free and clear" of these contractual obligations under Section 363(f), and Wapiti Utah must assume all pre- and post-petition defaults and obligations. Wapiti Utah's opposition creates no genuine issue of material fact to preclude judgment as a matter of law in favor of Monarch.

Dated: March 14, 2018             Respectfully submitted,

Beatty & Wozniak P.C.

/s/ *Tyler L. Weidlich*
Karen L. Spaulding, #16547
Tyler L. Weidlich, #51706
216 16th Street, Suite 1100
Denver, CO 80202-5115
Phone: (303) 407-4499
Fax: (303) 407-4494

kspaulding@bwenergylaw.com
tweidlich@bwenergylaw.com

and

Minor & Brown P.C.

*/s/ David M. Rich*
David M. Rich, #15211
650 S. Cherry Street, Suite 1100
Denver, CO 80246-1801
Ph: (303) 320-1053
Ph: (303) 376-6020 (Direct)
Fax: (303) 320-6330
drich@minorbrown.com

Attorneys for Monarch Natural Gas, LLC

## **CERTIFICATE OF SERVICE**

I certify that on March 14, 2018, a copy was served via electronic transmission to the following:

| | |
|---|---|
| Theodore J. Hartl, Esq. | Kyung S. Lee, Esq. |
| 600 17th Street | Charles M. Rubio |
| Suite 1800 South | Diamond McCarthy LLP |
| Denver, CO 80202 | 909 Fannin, 37th Floor |
| hartlt@ballardspahr.com | Two Houston Center |
| | Houston, TX 77010 |
| | klee@diamondmccarthy.com |
| | crubio@diamondmccarthy.com |

                                                */s/ David M. Rich*

18