# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | Case No. 17-17465-KHT |
| | ) | |
| BADLANDS ENERGY, INC., et al., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Jointly Administered Under |
| | ) | **Case No. 17-17465-KHT** |
| | ) | |
| MONARCH NATURAL GAS, LLC, n/k/a MONARCH MIDSTREAM, LLC, | ) ) ) | |
| Plaintiff | ) | |
| v. | ) ) | Adversary No. 17-01429 KHT |
| BADLANDS PRODUCTION COMPANY, f/k/a GASCO PRODUCTION COMPANY, BADLANDS ENERGY INC., f/k/a GASCO ENERGY, INC., and WAPITI UTAH, LLC f/k/a WAPITI NEWCO, LLC, | ) ) ) ) ) ) | |
| Defendants | ) | |

**RESPONSE TO WAPITI UTAH, L.L.C.'S SUPPLEMENT
TO MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Monarch Midstream, LLC ("Monarch") hereby submits this memorandum to respond to certain inaccuracies contained in the Supplement to Motion for Judgment on the Pleadings filed by Wapiti Utah, L.L.C. ("Wapiti Utah") on August 17, 2018 [Doc. No. 55].

**I.  Wapiti Utah Continues to Mischaracterize Monarch's Theory of the Case.**

Monarch does not take the position that the GPA and SWDA are "executory" and must be assigned to Wapiti Utah under Section 365 of the Bankruptcy Code.[1] As alleged in the Complaint, Monarch's position is that Wapiti Utah must assume all obligations under the GPA and SWDA, including the pre-petition default of approximately $1.2 million, because the

---
[1] Wapiti Utah's Supplement, at p. 5, ¶16 [Doc. No. 55].

contracts contain covenants running with the land.[2] The Court should ignore Wapiti Utah's ongoing attempts to confuse these simple but essential points.

Covenants running with the land, whether in law or equity, "are not 'interests' that fall within § 363(f)" and cannot be sold free and clear in bankruptcy.[3] It is also settled that indivisible contracts with "interdependent" provisions must be assumed or transferred in bankruptcy <u>in their entirety</u> – or "*cum onere*."[4] Indeed, the "*cum onere* principle applies equally to the transfer of rights and obligations under non-executory contracts pursuant to <u>11 USCS § 363</u> as to assumption and assignment of contracts and leases pursuant to 11 USCS § 365."[5] Therefore, any contract transferred by a debtor, whether executory, non-executory or otherwise, must be done so in its entirety. The "central inquiry" is whether the contractual obligations "are part of a single, integrated transaction…[if] so, the *cum onere* principle will require the rights and obligations under the agreements to be transferred <u>together</u>."[6]

The application of these principles to this case is not complicated. The GPA and SWDA contain covenants running with the land and thus cannot be sold free and clear under Section 363(f) or rejected under Section 365. Because the contracts are integrated (a point Wapiti Utah does not dispute), <u>all</u> obligations under the GPA and SWDA must be transferred to Wapti Utah in their entirety (*cum onere*). Monarch's position is not "confusing," as Wapiti Utah remarks in

---

[2] <u>Complaint</u>, at p. 11 ¶¶ 43-44 [Doc. No. 1].

[3] *In re Banning Lewis Ranch Co., LLC*, 532 B.R. 335, 345-46 (Bankr. D. Colo. 2015).

[4] *In re Storage Technology Corp.*, 53 B.R. 471, 475-476 (Bankr. D. Colo. 1985).

[5] *DB Structured Prods. v. Am. Home Mortg. Holdings, Inc. (In re Am. Home Mortg. Holdings, Inc.*, 402 B.R. 87, 98 (Bankr. Del 2009) (citing *Folger Adam Security, Inc. v. DeMatteis*, 209 F.3d 252 (3rd Cir. 2000) (emphasis added).

[6] *Id*. (emphasis added).

its Supplement;[7] it represents a straight-forward application of *cum onere* in context of a transfer of contractual rights through a Section 363(f) sale of assets.

Furthermore, as Wapiti Utah itself concedes, "covenants running with the land cannot be executory contracts."[8] "When a contract is non-executory, the debtor remains bound to its obligations under that contract after the bankruptcy filing."[9] Here, again, if the Court concludes the GPA and SWDA run with the land (which it should), and thus the contracts must be transferred to Wapiti Utah, all contractual obligations must be transferred *cum onere*.

## II. Horizontal Privity is Not Required for a Covenant to Run in Equity.

Wapiti Utah advances a new argument that horizontal privity is lacking. Horizontal privity, however, is not even required for a covenant to run with the land in equity. In *Flying Diamond Oil Corp.*, the Utah Supreme Court held: "[f]or a covenant to run in equity, it must 'touch and concern' the land, and there must be an intent that it run. **Privity is not required**, but the successor must have notice of the covenant."[10] Therefore, under Utah law, privity is effectively irrelevant in determining whether Wapiti Utah is bound to the GPA and SWDA as covenants running with the land.[11]

---

[7] Wapiti Utah's Supplement, p. 5, ¶16 [Doc. No. 55].

[8] Wapiti Utah's Motion for Judgment on the Pleadings, p. 7, ¶24 [Doc. No. 22] (citing *Matter of Topco, Inc.*, 894 F.2d 727, 739 n. 17 (5th Cir. 1990); *In re Beeter*, 173 B.R. 108, 114 (Bankr. W.D. Tex. 1994).

[9] *In re Superior Air Parts, Inc.*, 486 B.R. 728, 738 (Bankr. N.D. Tex. 2012); *see also Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3rd Cir. 1989).

[10] *Flying Diamond Oil Corp. v. Newton Sheep Co.*, 776 P.2d 618, 623, fn. 6 (Utah 1989) (emphasis added).

[11] Covenants running with the land in law and in equity (the latter commonly known as "equitable servitudes") have the same legal effect of binding a successor-in-interest with notice to legal obligations that "touch and concern" the land. *See* Restatement (Third) of Property: Servitudes § 1.4, cmt. a (2000) (noting "little difference" in the legal effect of the two concepts); *see also Dunning v. Buending*, 149 N.M. 260, 264 (Ct. App. 2010).

### III. Horizontal Privity Exists Between Monarch and Wapiti Utah In Any Event.

Horizontal privity exists between Monarch and Wapiti Utah even assuming *arguendo* (incorrectly) the element is required for the GPA and SWDA to run with the land. Horizontal privity exists when a covenant is "created in connection with a conveyance of an estate from one of the parties to another."[12] "When investigating the existence of privity, substance should prevail over technical form."[13] Here, the covenants contained in the GPA and SWDA were created in connection with Monarch's purchase of real property – the gathering and disposal systems – from Badlands' predecessor, Gasco Production Company ("Gasco"). Wapiti Utah fails to address this point entirely.

The Asset Purchase Agreement governing Monarch's purchase of Gasco's gathering and disposal systems contractually obligated the parties to execute the GPA and SWDA as consideration for the transaction.[14] Forms of both agreements were incorporated into and attached as exhibits to the Asset Purchase Agreement,[15] and both contracts were ultimately executed by Monarch and Gasco on March 1, 2010.[16] Significantly, Gasco's systems purchased by Monarch are located within the Area of Mutual Interest ("AMI") as defined in the GPA. The AMI, in turn, comprises the lands dedicated in the "Dedicated Reserves" and also comprises the lands on which the natural gas wells dedicated in the SWDA are located (i.e., the "Wilkin Ridge

---

[12] *Flying Diamond Oil Corp.*, 776 P.2d at 628.

[13] *Forest Meadow Ranch Prop. Owners Ass'n v. Pine Meadow Ranch Home Ass'n*, 2005 UT App. 295, at *P34 (UT App. 2005).

[14] Dec. of J. Williams, at ¶¶6-7, attached as Exhibit 2 to Monarch's Motion for Summary Judgment [Doc Nos. 27 and 29].

[15] *Id*. at ¶9.

[16] *Id*. at ¶10 and Exhibit 2-B.

4

and Riverbend Production Areas" are located within the AMI).[17] As discussed at the June 29, 2018 hearing, the AMI represents the "land" with which the covenants in the GPA and SWDA run. Therefore, the covenants in the GPA and SWDA, including the mineral and saltwater dedications and all other mutually dependent obligations, were created in connection with Monarch's purchase of Gasco's gathering and disposal systems – a conveyance of real property within the AMI. Horizontal privity exists on this basis alone.

Moreover, the GPA granted Monarch an easement "across the Leases, and across the lands in which Producer may have an interest" in furtherance of Gasco's dedication of its gas reserves in the AMI to Monarch's gathering facility.[18] These same "Leases" subject to the easement are interests within the AMI that are also subject to Gasco's dedication of the "Dedicated Reserves."[19] Therefore, the easement and dedication in the GPA are conveyances that simultaneously burden the same real property interest. Horizontal privity exists on this additional basis.

IV. **Wapiti Utah's Reliance on *In re Sabine* is Unavailing.**

Wapiti Utah's argument against horizontal privity centers solely on a misapplication of a Summary Order[20] issued by the U.S. Second Circuit in *In re Sabine Oil & Gas Corp.*, No. 17-1026, 2018 WL 2386902 (2nd Cir. May 25, 2018). In that order, the Second Circuit notably passed on deciding whether the gathering agreements "touch and concern" the land, which is the

---

[17] *See id*. at ¶¶6, 13, 17-18; Asset Purchase Agreement, at p. 1, ¶1.1 (definition of "Assets"), attached as Exhibit 2-A to Monarch's Motion for Summary Judgment [Doc Nos. 27 and 29].

[18] *See* Exhibit "A" to Amended and Restated Agreement, at ¶4, attached as Exhibit 2-C to Monarch's Motion for Summary Judgment [Doc Nos. 27 and 29].

[19] Asset Purchase Agreement, at pp. 1-2, ¶1.1 (definition of "Dedicated Reserves," including the "Leases"), attached as Exhibit 2-A to Monarch's Motion for Summary Judgment [Doc Nos. 27 and 29]

[20] As the order reflects on its face, Summary Orders "have no precedential value." *See* Exhibit A.

5

relevant issue here, but instead focused on horizontal privity, which is not even required for a covenant to run in equity. Nevertheless, Wapiti Utah's reliance on this appellate order is misplaced for multiple reasons.

First, the Second Circuit's order is distinguishable on the facts. In *Sabine*, the district court and the Second Circuit found no horizontal privity based on "separate agreements conveying [a] pipeline easement and a separate parcel of land."[21] The Second Circuit noted that the traditional paradigm under Texas law involves a covenant burdening real property interests in context of a conveyance related to those same interests to establish horizontal privity.[22]

Here, unlike *Sabine*, the covenants in the GPA and SWDA burden real property interests in context of a simultaneous conveyance affecting those same interests. The dedication in the GPA burdens the "Dedicated Reserves," which under the broadest interpretation includes all "right, title, or claim of every kind and character of Producer or its Affiliates in [i] the Leases or [ii] the lands within the AMI."[23] As reflected in the Asset Purchase Agreement, the gathering and disposal systems Monarch purchased from Gasco are located in "the lands within the AMI" owned by Gasco at the time of the conveyance. The GPA's gas reserve dedication, therefore, burdens the very same property – "the lands within the AMI" – subject to the real property conveyance from Gasco to Monarch. Similarly, the easement in the GPA expressly covers

---

[21] *In re Sabine* Order, at p. 4, attached hereto as Exhibit 1.

[22] *Id*. at pp. 4-5.

[23] Amended and Restated Agreement, at ¶1.1, p. 2, attached as Exhibit 2-C to Monarch's Motion for Summary Judgment [Doc. Nos. 27 and 29] (emphasis added).

6

"Leases," which is also expressly burdened by the GPA's reserve dedication.[24] These operative facts establish horizontal privity even under Wapiti Utah's interpretation of the *Sabine* order.

The SWDA dedicated to Monarch's recently purchased disposal facility all saltwater produced from the reservoir associated with Gasco's wells within the AMI.[25] Thus, similar to the GPA, the SWDA's salt water dedication burdens the very same property – the "lands within the AMI" – subject to the real property conveyance between Gasco and Monarch.[26]

Nevertheless, Wapiti Utah's privity argument based on *Sabine* is not even consistent with Utah law – the law that actually governs this case. In *Flying Diamond*, the Utah Supreme Court held that privity existed notwithstanding that the covenant at issue, a 2½ % oil and gas payment obligation, did not burden the property subject to certain reciprocal easements and other types of "surface rights."[27] The owner of the mineral estate, Champlin Petroleum Company, granted the 2 ½ % payment interest to the owner of the surface estate, Newton Sheep Company, in exchange for the easement and related rights designed to facilitate oil and gas exploration at the surface.[28] The payment covenant burdened the **<u>mineral estate</u>**, while the easements and related

---

[24] Exhibit "A" to Amended and Restated Agreement, at ¶4, attached as Exhibit 2-C to Monarch's Motion for Summary Judgment [Doc Nos. 27 and 29].

[25] Dec. of J. Williams, at ¶¶16-17, attached as Exhibit 2 to Monarch's Motion for Summary Judgment [Doc Nos. 27 and 29].

[26] Wapiti Utah's apparent contention that a real covenant must itself contain a simultaneous real property conveyance in the same agreement also conflicts with Utah law. Horizontal privity only requires a covenant be created "<u>in connection</u> with a conveyance of an estate from one of the parties to another," which can be embodied in multiple transactions. *Flying Diamond Oil Corp.*, 776 P.2d at 628; *see Forest Meadow Ranch Prop. Owners Ass'n, LLC*, 2005 UT App. 294 at P34 (horizontal privity existed because the covenants "were created <u>in anticipation of</u> subdividing and selling lots") (emphasis added). Regardless, the Asset Purchase Agreement, GPA and SWDA constitute one indivisible transaction. The GPA and SWDA were expressly incorporated into and a part of the overall consideration under the Asset Purchase Agreement, and the consideration underlying the contracts is single and unitary. Dec. of J. Williams, at ¶¶6-7, attached as Exhibit 2 to Monarch's Motion for Summary Judgment [Doc Nos. 27 and 29].

[27] *Flying Diamond Oil Corp.*, 776 P.2d at 620-622 and 628.

[28] *Id.*

7

conveyances burdened the **surface estate**. Therefore, Wapiti Utah's interpretation of *Sabine* that horizontal privity requires a covenant in an agreement to "burden the same property conveyed in the agreement" does not represent Utah law.[29]

### V. The Dedication of Saltwater in the SWDA Imposes Burdens on the Producer in its Capacity as a Mineral Owner and, Therefore, Runs With the Land.

Equally flawed is Wapiti Utah's contention that the SWDA does not "touch and concern" the land because the saltwater dedicated in the contract is not a "mineral" or "public property" under Utah law.[30] A covenant running with the land in Utah is merely a "formal agreement or promise...to do or not do a particular act" in relation to real property.[31] With regard to the touch and concern element, "**all** that must be shown for a covenant to run with the land is that it 'be of such character that its performance or nonperformance will so affect the use, value or enjoyment of the land itself….'"[32] "A real covenant bestows a benefit or imposes a burden only on the rights of a landholder, as landholder."[33]

As the SWDA provides, Gasco "owned or controlled" the saltwater produced from the reservoir underlying the oil and gas wells it operated in the AMI.[34] The SWDA dedicates this saltwater extracted from the wells in the AMI to Monarch's disposal facilities.[35] This dedication unquestionably "affects the use, value or enjoyment" of the mineral rights owned by Gasco and

---

[29] Wapiti Utah's Supplement, p. 3, ¶4 [Doc. No. 55].

[30] *Id*. at p. 7, ¶24; Wapiti Utah's Opposition to Motion for Summary Judgment, p. 11, ¶36 [Doc. No. 32].

[31] *Keith v. Mt. Resorts Dev., L.L.C.*, 337 P.3d 213, 224 (Utah 2014); Powell on Real Property, § 60.01.

[32] *Flying Diamond Oil Corp.*, 776 P.2d at 624.

[33] *Id*.

[34] Agreement for Disposal of Salt Water, at p. 1, Recitals, attached as Exhibit 2-F to Monarch's Motion for Summary Judgment [Doc Nos. 27 and 29].

[35] *Id*. at Art. 2.

8

its successors in their respective ownership capacity (i.e., burdens "the rights of a landholder, as landholder").[36] This is all that is required for a covenant to touch and concern the land. The Court should ignore Wapiti Utah's irrelevant attempts to distract this Court by questioning whether the produced water dedicated in the SWDA is a "mineral" or "public property" under Utah law.

### VI. Badlands' Liquidating Plan Lacks Relevance to the Dispositive Issues in this Adversary Proceeding.

Lastly, Wapiti Utah's Supplement advances a bizarre contention that Monarch's support of Badlands' liquidating plan somehow operates as a judicial admission of two dispositive legal issues: (1) that Wapiti Utah is not responsible for Badlands' pre-petition default of $1,058,744.80, and (2) that the GPA and SWDA are executory contracts subject to rejection under Section 365. Badlands' liquidating plan has absolutely no relevance to this Court's legal determination of whether the GPA and SWDA run with the land.

Monarch's support of Badlands' liquidating plan, at the outset, is consistent with the Court's Sale Order, dated October 26, 2017 [Case No. 17-17465, Doc. No. 223]. The Sale Order expressly provides that the sale of Badlands' oil and gas assets to Wapiti Utah was "subject to the determination in the Monarch Adversary…whether Monarch's gas gathering agreement or the salt water disposal agreement is a 'covenant running with the land' and thus cannot be sold free and clear…."[37] The Sale Order further provides that Wapiti Utah, as the buyer, is not responsible for Badlands' pre-petition default unless it is determined to the contrary in this

---

[36] *Flying Diamond Oil Corp.*, 776 P.2d at 624.

[37] Sale Order, dated October 26, 2017, at pp. 27-28, ¶39 [Case No. 17-17465, Doc. No. 223].

adversary proceeding.[38] Thus, according to the Sale Order, Badlands' pre-petition default will be paid to Monarch either by Badlands' estate through the ordinary claims administration process *or* by Wapiti Utah as the successor to Badlands' mineral assets. If the GPA and SWDA are found not to run with the land, or the Court otherwise concludes that Wapiti Utah is not required to cure Badlands' pre-petition default, Monarch's sole recourse is by submission of proofs of claim pursuant to the ordinary claims administration process.[39]

Monarch submitted a proof of claim against Badlands' estate, as an alternative means of obtaining payment of the debtor's pre-petition default under the GPA and SWDA, because this Court has not decided whether Wapiti Utah is responsible for this obligation. If the Court concludes Wapiti Utah is responsible for the obligation (as a covenant running with the land or otherwise), Monarch will amend its proof of claim to reflect the ruling.[40] Wapiti Utah's assertion that Monarch's proof of claim or support for Badlands' liquidating plan constitutes anything more than a valid exercise of its rights under the Sale Order or bankruptcy law in general is baseless.

Equally important, judicial admissions are applicable only to statements of fact – not "propositions of law" or "legal conclusions."[41] The U.S. Tenth Circuit clarifies that "inconsistent statements made in the alternative are not formal, deliberate declarations that could

---

[38] *Id.*

[39] *Id.* at pp. 9-10, ¶¶W-Z; *see also* 11 U.S.C. § 365(g).

[40] Sale Order, dated October 26, 2017, at p. 10, ¶Z [Case No. 17-17465, Doc. No. 223].

[41] *Guidry v. Sheet Metal Workers Int'l Assoc.*, 10 F.3d 700, 716 (10th Cir. 1993); *In re Lopez*, No. 08-01182, 2009 WL 3754204, at *10-11 (Bankr. D. N.M Nov. 5, 2009).

reasonably be construed as judicial admissions."[42] Therefore, even if Monarch's support of Badlands' liquidating plan could be construed as some kind of "tacit concession" (which it cannot),[43] a party cannot judicially admit a legal conclusion, such as whether contracts are "executory" under bankruptcy law or whether a buyer of a debtor's assets has the legal obligation to cure a pre-petition contractual default. Wapiti Utah's contention to the contrary presents yet another distraction in this case.

## CONCLUSION

For the foregoing reasons and those set forth in its prior memoranda, Monarch requests that the Court deny Wapiti Utah's Motion for Judgment on the Pleadings and grant Monarch's Motion for Summary Judgment.

[Signatures on next page.]

---

[42] *U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 833, n. 4 (10th Cir. 2005); *see also In re Lopez*, No. 08-01182, 2009 WL 3754204, at *10-11 (Bankr. D. N.M Nov. 5, 2009) (statement in the alternative made in a bankruptcy motion regarding "whether a debt is dischargeable under 11 U.S.C. §523(a)(15)" was not a judicial admission because it was made in the alternative and "concede[d] a conclusion of law, not a statement of fact").

[43] Wapiti Utah's Supplement, at p. 6, ¶18 [Doc. No. 55].

Dated: August 27, 2018

Respectfully submitted,

Beatty & Wozniak P.C.

/s/ *Tyler L. Weidlich*
Karen L. Spaulding, #16547
Tyler L. Weidlich, #51706
216 16th Street, Suite 1100
Denver, CO 80202-5115
Phone: (303) 407-4499
Fax: (303) 407-4494
kspaulding@bwenergylaw.com
tweidlich@bwenergylaw.com

      and

Minor & Brown P.C.

*/s/ David M. Rich*
David M. Rich, #15211
650 S. Cherry Street, Suite 1100
Denver, CO 80246-1801
Ph: (303) 320-1053
Ph: (303) 376-6020 (Direct)
Fax: (303) 320-6330
drich@minorbrown.com

*Attorneys for Monarch Midstream, LLC*

## CERTIFICATE OF SERVICE

      I certify that on August 27, 2018, a copy of this **Response to Wapiti Utah, L.L.C.'s Supplement to Motion for Judgment on the Pleadings** was filed and served using the Court's CM/ECF filing system which will send notification to the parties who have entered an appearance, including:

Kyung S. Lee, Esq.
Charles M. Rubio, Esq.
Diamond McCarthy LLP
909 Fannin, 37th Floor
Two Houston Center
Houston, TX 77010
klee@diamondmccarthy.com
crubio@diamondmccarthy.com
*Attorneys for Wapiti Utah, L.L.C.*

                                              /s/ *David M. Rich*